STATE of Iowa, Appellee,

v.

Lisa L. FOX, Appellant.

No. 91–982.

Supreme Court of Iowa.

Oct. 21, 1992.

William L. Kutmus of Kutmus & Pennington, P.C., and Lylea Dodson Critelli of Nick Critelli Associates, P.C., Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., Mary Richards, County Atty., and Michael Houchins, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

LAVORATO, Justice.

In her appeal from an attempted murder conviction, defendant Lisa Fox raises a number of issues. Because she failed to preserve several of those issues for our

review, we address only two: (1) whether she was unconstitutionally denied her right to present a defense, and (2) whether her trial counsel was ineffective. We affirm.

## I. *Background Facts.*

Lisa Fox and Robert Hasiak became friends in 1988. In 1990 Lisa and her teen-age. daughter Sonya moved into Hasiak's residence.

Five shots were fired at Hasiak at his home on March 6, 1990. Two of them hit their mark. Both Lisa and Sonya were present at the time of the shooting.

Police officers questioned Lisa at the scene. Sonya, however, was not questioned. Lisa refused to consent to Sonya's interrogation because Sonya was a minor.

Before the police questioned Lisa, she volunteered to one officer that "we both shot him." Lisa repeated this statement verbatim when the officer asked her what she had said.

During police interrogation—which was preceded by *Miranda* warnings—Lisa stated to officers "I shot him. It was an accident."

Though seriously wounded, Hasiak remained. conscious and coherent during his rescue and medical treatment. When officers asked him to explain what had happened, Hasiak replied, "They shot me.... They tried to kill me." The officers then asked Hasiak who "they" were. He named Lisa Fox and Sonya Fox.

## II. *Background Proceedings.*

In March 1990 Lisa was charged with attempting to murder and willfully injuring Robert Hasiak. *See* Iowa Code §§ 707.11, 708.4 (1989). Sonya was likewise charged in June following the juvenile court's waiver of its jurisdiction.

Sonya later initiated plea negotiations with the State. On August 27, 1990, Story County attorney Mary Richards sent Sonya's counsel a letter. The letter outlined the conditions the State would impose should Sonya plead guilty. The conditions were that (1) Sonya agree not to testify in Lisa's case, (2) Sonya admit to the facts or agree to a trial on the minutes of testimony, (3) the disposition of Lisa's case precede the disposition of Sonya's case, (4) sentencing be done pursuant to Iowa Code section 232.8(3), (5) the pertinent offense be attempted murder or conspiracy to commit murder, and (6) the State be bound to an Iowa Rule of Criminal Procedure 9 agreement, which would provide for deferred judgment and a four-year probationary period to include appropriate counseling.

Plea negotiations between the State and Sonya continued. On October 3, 1990, county attorney Richards sent Sonya's counsel a second letter. The letter said:

This.letter is intended to put in writing the State's present position in plea negotiations in *State v. Sonya Fox,* as conveyed verbally by Mike Houchins.

Because of my concern that the first step in rehabilitation is acceptance of personal responsibility for one's behavior, I feel that it is in neither Sonya's nor the community's interest to allow a plea in which she does not admit culpability.

A second concern is our present expectation that Sonya will testify to facts and circumstances which are contrary to the physical evidence in the case. Entering into a plea agreement which guarantees a deferred judgment in the face of such anticipated testimony has the appearance of condoning perjury.

As a consequence of the above considerations, the State will entertain a guilty plea to attempted murder in which Sonya Fox admits the facts corroborated by other evidence. In exchange for such a plea, the State would remain silent at sentencing and would not resist sentencing under Section 232.8(3) of the Code of Iowa [juvenile tried as an adult may still be granted deferred judgment though adult in similar circumstances may not be].

This letter conspicuously omitted any mention of Sonya not testifying in Lisa's case.

At this point negotiations between the State and Sonya apparently stalled. They resumed almost six months later, on the Friday immediately preceding Lisa's March 4, 1991, trial date. Sonya, the State, and

Lisa agreed to the following plea bargain: (1) Sonya would plead guilty to the attempted murder charge; (2) the State would consent to a deferred judgment for Sonya under Iowa Code section 232.8(3) (1989); and (3) Lisa would waive her rights to a jury trial and witness confrontation and allow the State to present its evidence in documentary form via the trial information, the minutes of testimony, exhibits, and depositions.

Pursuant to this plea bargain, Lisa was tried to the district court on March 4, 1991. Later that same day Sonya entered a guilty plea.

During her guilty plea proceeding, Sonya made an unsworn statement on the record that she had fired five shots at Robert Hasiak on March 6, 1990. At this point, Sonya's counsel asked for a recess and consulted with his client. During this recess, county attorney Richards told Sonya's counsel that if Sonya persisted in her statement regarding the five shots, the State would reject the plea bargain.

When the guilty plea proceeding resumed, Sonya asked the court for an opportunity to change her earlier statement to the court. She then recanted her earlier statement, indicating instead that she had shot Robert Hasiak attempting to kill him.

At sentencing, Sonya received a deferred judgment and probation. Following the sentencing, county attorney Richards had a conversation with Sonya's counsel. Richards told him that if his client ever testified (1) that she was responsible for all five shots, or (2) in some other way that was inconsistent with the State's belief about what happened on the night of the shooting, the State would view her testimony as perjury and would promptly move to revoke Sonya's deferred judgment and probation.

Later, after this conversation, the district court heard Lisa Fox's motion for new trial and motion in arrest of judgment. Lisa called Sonya to testify at the hearing on these matters. Once sworn, Sonya asserted her Fifth Amendment right against self-incrimination in response to certain questions posed by Lisa's counsel. These questions were aimed at exculpating Lisa and sought to elicit the very testimony the plea bargain prohibited. Because the district court concluded Sonya properly invoked her Fifth Amendment right against self-incrimination, she did not answer any of these questions.

Lisa then argued that the sum of the State's actions regarding the plea bargain with Sonya was tantamount to prosecutorial misconduct and unconstitutionally interfered with Lisa's right to present her own defense.

In ruling against Lisa in her posttrial motions, the district court was critical of some of the State's actions surrounding the culmination of the plea agreement with Sonya. The court, however, found insufficient evidence that the State's actions in any way improperly coerced Sonya into invoking her Fifth Amendment right.

This appeal followed.

### III. *Right to Present a Defense.*

Lisa urged in the district court, as she does here, that she has a constitutional right to present a defense. She thinks a number of things happened in the district court that frustrated that right and denied her due process under the Fifth and Fourteenth Amendments to the United States Constitution and under article I, section 9 of the Iowa constitution. These include (1) the State's efforts to intimidate and prevent Sonya from testifying, (2) the district court's refusal to recognize the State's substantial interference with Sonya's testimony and to remedy that interference, (3) the district court's refusal to grant use immunity to Sonya, and (4) the district court's refusal to recognize that Sonya's testimony constituted newly discovered evidence.

Because Lisa raises constitutional issues, our review is de novo. We independently evaluate the totality of the circumstances as evidenced by the whole record. *See State v. Stanford,* 474 N.W.2d 573, 575 (Iowa 1991).

The right to present a defense is rooted in the Sixth Amendment right to compulsory process. *Washington v. Texas,* 388 U.S.

14, 18–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019, 1023 (1967). One commentator, who has studied the development of the compulsory process clause, thinks that at the time of its adoption the clause had this meaning: "[A] defendant should have a meaningful opportunity, at least on a par with that of the prosecution, to present a case in his favor through witnesses." Peter Westen, *The Compulsory Process Clause*, 73 Mich.L.Rev. 71, 78 (1974).

The right to present a defense is so fundamental and essential to a fair trial that the Supreme Court has accorded it the status of an incorporated right in the due process clause of the Fourteenth Amendment:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington*, 388 U.S. at 19, 87 S.Ct. at 1923, 18 L.Ed.2d at 1023. Of course, because of this status, the right to present a defense is binding on the states. *Id.* Since *Washington*, several Supreme Court decisions in this area have been decided on the due process clause alone without any mention of the Sixth Amendment. *See, e.g., Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (per curiam).

When does a prosecutor cross the line and violate a defendant's due process right to present a defense? In *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (per curiam), the actions of a trial judge rather than a prosecutor were under scrutiny. *Id.* at 97, 93 S.Ct. at 353, 34 L.Ed.2d at 332–33. Nevertheless, we think the conclusion the *Webb* Court reached equally applies to a prosecutor.

In *Webb*, the trial court had gratuitously and unnecessarily singled out the defendant's only witness for a lengthy admonition on the dangers of perjury. The judge assured the witness that if he lied he would be prosecuted and probably convicted of perjury. In addition, the judge warned the witness that any resulting sentence would be added onto the one he was serving and impair his chances of parole. To no one's surprise the witness refused to testify, and the trial court excused him. The Supreme Court had little trouble finding that the judge's remarks drove the witness from the stand and thereby deprived the defendant of due process. *Id.* at 97–98, 93 S.Ct. at 353–54, 34 L.Ed.2d at 333.

A federal prosecutor's actions were under scrutiny in *United States v. Morrison*, 535 F.2d 223 (3rd Cir.1976). In *Morrison*, the prosecutor had repeatedly warned a prospective defense witness about the possibility of a federal perjury charge if she testified falsely. The appellate court concluded the prosecutor's actions violated the defendant's due process rights because they kept the witness from giving favorable testimony after she had agreed to do so. *Id.* at 227–28.

In *United States v. Henricksen*, 564 F.2d 197 (5th Cir.1977) (per curiam), a federal prosecutor did exactly what the prosecutor here attempted to do. Before trial a codefendant, whose testimony would have tended to exonerate the defendant, plea bargained with the government. As part of the plea, the codefendant agreed not to testify in any way regarding the defendant. A violation of this provision would void the plea agreement and subject the codefendant to prosecution on all counts of the indictment. *Id.* at 198.

On appeal of the defendant's conviction, the government and the trial judge confessed error on this point. In its independent examination of the record, the appellate court agreed that error had been committed and set aside the conviction. The court noted that "[s]ubstantial government interference with a defense witness' free and unhampered choice to testify violates due process." *Id.*

Finally, in *United States v. Thomas*, 488 F.2d 334 (6th Cir.1973) (per curiam), a code-

fendant was granted a directed verdict. The defendant then called the codefendant to testify in the defendant's case-in-chief. The trial judge warned the codefendant that his testimony could lead to a prosecution for misprision of a felony and allowed the codefendant to seek out counsel. In the meantime, a secret service agent acting at the behest of the prosecutor told the codefendant he *would* be prosecuted for misprision of a felony if he testified. The codefendant then refused to testify. *Id.* at 335. The appellate court concluded the agent's actions "substantially interfered with any free and unhampered determination the witness might have made as to whether to testify and if so as to the content of such testimony." *Id.* at 336. The court reversed the defendant's conviction, finding a due process violation. *Id.*

▆▆▆ This court has likewise held that it is improper to intimidate a witness. However, unlike some federal courts, this court has required a showing of prejudice to establish a due process violation. *See State v. Ivy*, 300 N.W.2d 310, 314 (Iowa 1981); *State v. Erving*, 346 N.W.2d 833, 836–37 (Iowa 1984); *State v. Ruble*, 372 N.W.2d 216, 218 (Iowa 1985). In determining whether prejudice has resulted from a prosecutor's intimidating tactics, trial courts are vested with broad discretion. We will not overturn a trial court's ruling on this point unless the defendant shows the trial court abused its discretion. Such an abuse arises only if the record is clear that the trial court exercised its discretion on grounds or for reasons clearly unreasonable or untenable. *Ruble*, 372 N.W.2d at 218.

With these principles in mind we next consider each of Lisa's complaints.

▆▆▆ A. *Prosecutorial misconduct.* Lisa credits Sonya's failure to testify as a defense witness to three alleged instances of intimidation by the county attorney. These include (1) the initial plea offer to Sonya in which she is to agree not to testify for Lisa; (2) the county attorney's threat to Sonya's counsel at Sonya's plea; and (3) the county attorney's threat to Sonya's counsel after Sonya's plea but before the hearing on Lisa's posttrial motions. Lisa argued in posttrial motions for new trial and in arrest of judgment, as she does here, that these actions cumulatively coerced Sonya into silence.

We agree that all three instances constituted improper conduct on the part of the county attorney, and we condemn such tactics. But the question we need answer is whether such conduct intimidated Sonya. In other words, did such conduct keep Sonya from testifying for Lisa?

In our de novo review of the record, we find that Sonya's silence was not the product of the county attorney's misconduct. In short, there was no intimidation.

Rather, it is evident that throughout the entire proceedings against Lisa, Sonya consistently sought the protection of the Fifth Amendment against self-incrimination. Sonya refused to testify for Lisa—not because she was fearful of retribution from the county attorney—but because she never intended to testify for Lisa in any event. We cannot improve upon the district court's conclusion:

During the extended pretrial proceedings in this case, Sonya Fox consistently and repeatedly indicated the intention to invoke her Fifth Amendment right to remain silent with regard to the prosecution against her mother. Sonya's invoking her Fifth Amendment right at the posttrial motion hearing was nothing new. She resisted a consolidated trial. She requested being tried before her mother. She refused to give testimony even in an ex parte, in-camera pretrial proceeding relating to her mother's request that Sonya be granted use immunity. During the posttrial motion hearing, Sonya Fox's attorney testified that he worked to maintain and preserve his client's Fifth Amendment right to remain silent throughout the criminal proceedings, regardless of anything said by the county attorney. Under these circumstances, the court cannot conclude that Sonya Fox's silence during the posttrial motion hearing was the result of threats by the prosecutor. Sonya Fox's silence throughout this prosecution has been the

result of a voluntary decision to invoke her constitutional rights under the Fifth Amendment. Her Fifth Amendment rights have, obviously, conflicted with Lisa Fox's rights under the Sixth Amendment. That conflict has properly been resolved in favor of Sonya Fox's Fifth Amendment rights.

We concede there is a fine line between reminding a defense witness about the consequences of committing perjury and driving that witness from the stand. But given Sonya's persistent reliance on her Fifth Amendment right from the onset of Lisa's case, we must draw one inference. This inference is that from the very beginning of the proceedings against Lisa, Sonya wanted to protect herself. Sonya was not cowed into silence by an overzealous prosecutor.

We find ample reason in the record to support the district court's rejection of the intimidation claim. So we refuse to disturb the court's ruling.

■ **B.** *Refusal to grant Sonya "use immunity."* Use immunity refers to an order of court that compels a witness to give self-incriminating testimony while at the same time prohibiting the use of such testimony in a subsequent prosecution of the witness. Use immunity protects a witness only against the actual use of the compelled testimony and evidence derived directly or indirectly from such testimony. In contrast, transactional immunity protects the witness against all later prosecutions related to matters about which the witness testifies. Black's Law Dictionary 1543 (6th ed. 1990).

In her posttrial motions for new trial and in arrest of judgment, Lisa makes the following argument. The only reason she accepted the plea bargain was because of her inability to present Sonya's testimony at trial. Lisa was thwarted in her attempt to do so by the district court's pretrial ruling denying her request of use immunity for Sonya. This ruling denied Lisa her right to present a defense guaranteed by the federal and state constitutions.

Whether use immunity is a viable option when a defense witness invokes the Fifth Amendment right against self-incrimination is a question of first impression for us.

The district court has no statutory authority to grant use immunity on its own motion, as Lisa apparently recognizes. *But see* Iowa R.Crim.P. 19(3) (giving county attorney discretion to seek court order granting immunity to witness). If such authority does exist, it must come from the district court's general inherent powers.

A number of courts have addressed the issue of whether use immunity is constitutionally required for essential exculpatory testimony. Those cases are collected in Robert M. Schoenhaus, Annotation, *Right of Defendant in Criminal Proceeding to Have Immunity From Prosecution Granted to Defense Witness,* 4 A.L.R.4th 617, 621–23 (1981 & Supp.1990).

The majority of these courts refuse to recognize such immunity as constitutionally required. *Id.* Generally, several policy reasons are given for this refusal. First, in granting use immunity to defense witnesses, the judicial branch risks encroaching on policy assessments traditionally made by the executive branch. *See United States v. Thevis,* 665 F.2d 616, 639–40 (5th Cir.1982).

Second, defense use immunity significantly impairs the State's ability to prosecute immunized witnesses and increases the State's burden of proof. In such trials, the State must overcome the additional requirement that its evidence is "untainted" by the immunized testimony. *Id.*

Last, the potential for abuse by codefendants, coconspirators, friends, and employees in defense use immunity cases is substantial. *Id.* As one court noted, granting use immunity to defense witnesses "could create opportunities for undermining the administration of justice by inviting cooperative perjury among law violators." *United States v. Turkish,* 623 F.2d 769, 775 (2d Cir.1980).

We need not decide the issue because we think use immunity—if available at all—should be considered only in circumstances in which the prosecution has improperly prevented a defense witness from giving

essential exculpatory evidence. *See, e.g., United States v. Morrison,* 535 F.2d 223, 229 (3d Cir.1976) (circumstances exist in which due process may demand State request use immunity for defense witness). We have already determined that this did not happen here. For this reason, we think the district court correctly denied the posttrial motions as to the use immunity claim.

■ C. *Denial of "newly discovered evidence."* Lisa unsuccessfully argued in her motion for new trial and motion in arrest of judgment that she possessed newly discovered exculpatory evidence: that Sonya would testify it was she who fired all five shots at Hasiak.

The district court denied the motions on several grounds. First, Lisa failed to comply with Iowa Rule of Criminal Procedure 23(2)(b)(8). This rule provides that

> [w]hen a motion for new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits or testimony of the witnesses by whom such evidence is expected to be given....

Iowa R.Crim.P. 23(2)(b)(8).

As the district court noted, Lisa failed to present "either an affidavit or testimony from Sonya disclosing the anticipated newly discovered, exculpatory evidence." Lisa did try to solicit Sonya's testimony at the hearing on the posttrial motions but was unsuccessful because Sonya successfully invoked her Fifth Amendment right. (Sonya's counsel convinced the court that Sonya's testimony could subject her to crimes that were not covered by the trial information.)

Second, the district court found that the anticipated evidence was not newly discovered. *See* Iowa R.Crim.P. 23(2)(b)(8) (allows court to grant new trial when defendant has discovered important and material evidence in his or her favor since verdict, which defendant could not with reasonable diligence have discovered and produced at trial). In a pretrial offer of proof, Lisa's counsel advised the court that Sonya would testify that she had fired all five shots. The offer of proof was made to support Lisa's request of immunity for Sonya. Before the offer of proof, Lisa's counsel made a professional statement to the court. He told the court that the offer was based on what Sonya had told Lisa and what Sonya's lawyer had told him.

Third, the district court found that for purposes of rule 23(2)(b)(8), Sonya's anticipated testimony was not newly discovered evidence simply because she invoked her Fifth Amendment right. Lisa had contended, as she does here, that Sonya's testimony was unavailable for that reason. On this point, the district court relied on *Jones v. Scurr,* 316 N.W.2d 905, 910 (Iowa 1982). In *Jones,* this court held that the testimony of a codefendant presented at a postconviction hearing was not newly discovered evidence even though the codefendant had earlier invoked his Fifth Amendment right against self-incrimination before the defendant's trial. *Id.* It was clear in *Jones*—as here—that the defendant knew of the general nature of the codefendant's testimony at the time of the defendant's trial.

Last, because of the overwhelming evidence against Lisa, the district court found that Sonya's anticipated testimony would probably not have changed the result of the trial. *See Jones v. State,* 479 N.W.2d 265, 274 (Iowa 1991) (defendant not entitled to a new trial based on newly discovered evidence unless the evidence "probably [would have] changed the result of [the] trial").

We think all the reasons the district court gave support its denial of the posttrial motions on the grounds of newly discovered evidence. We therefore refuse to set aside its ruling on the ground of abuse of discretion. *See Jones,* 316 N.W.2d at 909.

We reject Lisa's contention that the district court's reliance on *Jones v. Scurr* was misplaced because prosecutorial misconduct was responsible for Sonya's unavailability. In short, our de novo review finding that the prosecutor's misconduct did not intimidate Sonya answers this contention.

IV. *Ineffective Assistance of Trial Counsel.*

There are several issues we have not addressed because they were not preserved for review in the district court. *See State v. Wages*, 483 N.W.2d 325, 326 (Iowa 1992). One concerns the constitutionality of Iowa Rule of Procedure 19, regarding expert witnesses. The other concerns Lisa's contention that the district court erred when it allowed Lisa to waive her Sixth Amendment rights in exchange for Sonya's deferred judgment and probation.

Lisa now contends that her trial counsel was ineffective because he did not properly preserve these issues for review. She also contends her trial counsel was ineffective because he failed to comply with the procedural requirements for newly discovered evidence.

We preserve these claims of ineffective assistance of counsel for postconviction determination. This will enable Lisa's trial counsel to respond to these charges in a full evidentiary hearing. *See State v. Poyner*, 306 N.W.2d 716, 719 (Iowa 1981).

V. *Disposition.*

Because we find no grounds for reversal, we affirm.

AFFIRMED.