HECHT, Justice
(dissenting).
I respectfully dissent. Similar to the Fifth Amendment of the United States Constitution, article I, section 9 of the Iowa Constitution guarantees Becker’s fundamental right to a fair jury trial and precludes a deprivation of his liberty interest without due process of law. “The right to present a defense is ... fundamental and essential to a fair trial....” State v. Fox, 491 N.W.2d 527, 531 (Iowa 1992).
“The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant’s version of the facts as well as the prosecution’s to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution’s witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.”
*164 Id. (quoting Washington v. Texas, 888 U.S. 14, 19, 87 S.Ct. 1920, 1928, 18 L.Ed.2d 1019, 1023 (1967)). We, and other courts, have concluded a defendant’s right to present a defense has been denied when defense witnesses have been prevented by court rule from testifying or intimidated into not testifying, Webb v. Texas, 409 U.S. 95, 98, 93 S.Ct. 351, 353-54, 34 L.Ed.2d 330, 333 (1972) (per curiam); Washington, 388 U.S. at 23, 87 S.Ct. at 1925, 18 L.Ed.2d at 1025, when a district court fails to instruct the jury on a defense theory of the case, Bradley v. Duncan, 315 F.3d 1091, 1098-99 (9th Cir.2002), when the district court excludes testimony relevant to a defendant’s defense of justification, State v. Begey, 672 N.W.2d 747, 753 (Iowa 2003), or when an indigent defendant is denied court funds to hire an expert to prepare a defense, State v. Coker, 412 N.W.2d 589, 592-93 (Iowa 1987). Applying the same reasoning, I would hold that the district court’s failure to give a “consequences” instruction under the circumstances of this case deprived Becker of due process because it, in effect, nullified his insanity defense and thus deprived him of a fair trial.
The majority opinion details the long history of the insanity defense in Iowa jurisprudence. Expressing the public policy that insane persons shall not be convicted of a crime, the legislature codified the defense based on the enlightened proposition that mental illness should be treated, not punished. The trial in this case was about only one substantial question: Would the jury credit Becker’s insanity defense?
The standard against which the insanity defense is measured is, of course, a demanding one. Public policy necessitates that the defense be available only when the defendant’s severe mental illness caused, the act(s) constituting the factual basis of a criminal charge. Jurors take this notion seriously, tending not to lightly excuse violent and homicidal behavior from criminal sanction on insanity grounds. The extraordinary factual circumstances of this case made it obvious before Becker’s trial began that jurors would have overwhelming concerns about the consequences of an insanity verdict as they pondered whether Becker proved the defense.
As the majority opinion recounts, Becker had repeatedly exhibited conduct suggesting severe mental derangement during the nine months prior to the shooting. On three occasions, Becker was hospitalized for mental health treatment after episodes of violent behavior against both family members and a stranger. The episodes of violence were accompanied by statements revealing Becker had an attenuated connection with reality, including persistent delusional claims that Coach Ed Thomas controlled him and others through extrasensory powers. Despite his recurring inpatient psychiatric treatment, Becker’s severe mental illness was not controlled. Less than a week before he shot and killed Coach Thomas, Becker violently assaulted a stranger, damaged the stranger’s home by striking it with a baseball bat and crashing into it with a car, and was admitted to a hospital for treatment. Becker was discharged from the hospital approximately twenty-four hours before the tragedy that led to this prosecution. Thus, the factual circumstances of Becker’s mental illness forming the foundation of his insanity defense were characterized by recurring episodes of extreme violence interrupted by short courses of unsuccessful treatment of schizophrenia.
Becker’s defense counsel astutely anticipated these extraordinary circumstances would make it impossible for the jury in this case to credit the insanity defense without a consequences instruction. Counsel correctly intuited that if kept in the dark about the consequences of a verdict *165 of insanity, the jury could not take a chance that Becker would again be turned loose without adequate medical management of his severe mental illness to continue his crazed and extremely violent behavior that had already caused one death. In my view, the peculiar circumstances of this case demanded a consequences instruction to allow Becker a meaningful opportunity to assert a statutory insanity defense and to assure him a fair trial.
The record amply demonstrates the jury had reached an impasse on the insanity defense by midday on the third day of its deliberations. Seeking to break the impasse, the jury requested information about “what would happen to Mark Becker” if he were found insane. I believe this request clearly reveals some jurors were unwilling to credit the insanity defense without the additional information. Indeed, when the district court denied the jurors’ request for such information, the deadlock persisted through the remainder of the third day of deliberations, and through the fourth day as well, before the impasse was broken and the uninformed jury rejected Becker’s defense. Under these circumstances, I would hold, just as surely as if Becker had been denied the opportunity to present testimony, expert or otherwise, supporting his insanity defense, the district court’s rejection of Becker’s proposed “consequences” instruction deprived Becker of a meaningful opportunity to assert his insanity defense. Given Becker’s history of violent, delusional, and homicidal conduct consistent with severe mental derangement, the jurors were justifiably unwilling, without the requested information about the consequences, to risk the possibility that Becker would again be released without proper psychiatric assessment and management. Deprived of a meaningful opportunity to assert his only defense, Becker’s right to a fair jury trial was abridged. I would grant him a new trial.