**IN THE COURT OF APPEALS OF IOWA**

No. 22-1103
Filed January 10, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MICHAEL LANG,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Grundy County, Joel Dalrymple, Judge.

The defendant appeals his convictions for first-degree murder, attempted murder, and assault with intent to inflict serious injury. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney General, for appellee.

Heard by Tabor, P.J., and Ahlers and Chicchelly, JJ. Buller, J., takes no part.

**TABOR, Presiding Judge.**

Michael Lang appeals his convictions for first-degree murder, attempted murder, and assault on a peace officer with intent to inflict serious injury. He contends the district court should have instructed the jury on justification. But Lang's argument, as raised on appeal, was not preserved in the district court. Having nothing to review, we affirm.

## I. Facts and Prior Proceedings

Grundy Center reserve police officer Cody Niehaus was on patrol when a pickup passed him going thirty-eight miles per hour in a twenty-five zone. This was "a small town," so he knew the driver, Michael Lang. Officer Niehaus flashed his emergency lights to pull the truck over, but Lang sped away. Neihaus pursued, his lights and siren activated, going as fast as ninety miles per hour.

After about a mile, Lang turned onto a gravel road and stopped. Exiting his truck, he yelled "shoot me, shoot me, shoot me." When Officer Niehaus stepped out of his car, Lang pushed him and said: "Pull your fucking gun, you fighting bitch." Niehaus grabbed his radio microphone, calling for more officers. But Lang grabbed the radio, yelling "bring it on, bring it on, boy." The officer pulled out his Taser, and Lang knocked it out of his hands as well.

At that moment a passerby pulled up offering help. While Lang was momentarily distracted, Niehaus picked up the Taser and shocked Lang. But Lang ripped the cords off himself and tackled Niehaus to the ground. In the scuffle, Lang punched and strangled Niehaus.

Just then, Grundy County Deputy Samuel Broome pulled up, pointed his gun at Lang, and told him to put his hands up. Lang responded: "Come get me,"

jumped into his truck, and drove off.  Eventually Lang drove to his house, where Deputy Broome saw him entering by the garage door.  Broome knocked on the front door of the house, yelling that he wanted to talk to Lang and for him to come out with his hands up.  Several other officers tried too, but Lang did not respond.

More officers arrived and set up a perimeter around the house.  Lang's father also came, knocked on the front door, and asked Lang to come out.  Still no response.  So law enforcement decided to send in the Iowa State Patrol's tactical team followed by a K-9 unit.  Officers entered and cleared the garage.  They warned Lang that they would send the dog into the house to bite him if he did not come out.  After no response, they released the dog into the basement but not the main house where Lang was located.

The tactical team then prepared to enter the house.  After announcing themselves, the team swept in, led by Sergeant Jim Smith.  The other officers heard Smith say "gun" and "get back."  Then a single shot sounded "loud" and "hollow."  Smith fell to the floor of the garage.  Officers listening to the radio traffic heard: "Officer down" and calls for emergency responders.  Another trooper, Mitchell Kappel, saw Lang standing in the doorway of the garage with a long, black shotgun.  Kappel returned fire, but missed Lang, who disappeared into the house. The officers then retreated to the basement.  Lang shouted: "Get the fuck out of my house," "Come in and start shooting," and "I'll kill you like I killed your buddy."

Police negotiators called Lang on his cellphone, urging him to come out. But Lang said: "No way in hell."  Upping the ante, police introduced a Ballistic Engineered Armored Rescue Counter Attack Truck (BEARCAT) to the scene. State Trooper Chass Ossian drove the BEARCAT up to the house.  When Lang

still refused to come out, Ossian used the BEARCAT's ramrod to push down the front door, a window, and a wall. Undeterred, Lang appeared at a window and shot at the BEARCAT, leaving a bullet hole in the windshield on the driver's side. Ossian testified, "If it would have made it through the windshield, I would have been shot." The tactical team eventually reentered the house and took Lang into custody. Sergeant Smith died from the shotgun wound to his chest.

The State charged Lang with murder in the first degree, a class "A" felony, in violation of Iowa Code section 707.2 (2021); attempt to commit murder for shooting at Ossian, a class "B" felony, in violation of section 707.11; and assault on a peace officer with intent to inflict serious injury for the attack on Niehaus, a class "D" felony, in violation of section 708.3A(1).

Before trial, Lang gave notice of his justification defense.[1] The State moved in limine to prohibit the defense from "[a]sking any witness legal questions about the law regarding self-defense or 'stand your ground.'" The State also sought to prevent defense counsel from "[a]sking any witness if law enforcement had an arrest warrant or search warrant" for Lang's home. The State argued, "This is a legal issue and not an issue for the jury to consider."

At a pretrial hearing, the State pointed to Iowa Code section 704.2A, the "stand your ground" statute enacted in 2017, which permits individuals to use deadly force to defend themselves or another if the individual is lawfully present and has not engaged in illegal activity. *See, e.g.*, *State v. Lorenzo Baltazar*, 935

---

[1] Lang moved to suppress his police interviews based on a *Miranda* violation. After the State said it did not plan to offer those interviews into evidence, Lang withdrew his motion. He raised no other suppression issues.

N.W.2d 862, 870 (Iowa 2019). But there are exceptions. Deadly force is not permitted against peace officers acting in "the lawful performance" of their "official duties." Iowa Code § 704.2A(2)(c). The State argued that whether the officers were acting lawfully was not a jury question and, because the officers did act lawfully, the instruction was unwarranted. The defense emphasized that the lawfulness of the officer's actions was the central issue and should have been for the jury to decide as a fact finder—aided by the justification instruction.

The court agreed with the State, reasoning that the justification defense does not apply to "lawful actions" of peace officers and whether officers acted lawfully was a question of law for the court, not a fact question for the jury. It sustained the State's motion on those two grounds but told the parties it would consider offers of proof that the defense believed necessary and rule on objections as they arose.

Acting on that opening, the defense called Deputy Broome for an offer of proof. Broome testified that the officers did not secure a search warrant or an arrest warrant but did not need a warrant to enter and arrest Lang because of the exigent circumstances. Broome also agreed that the police never announced to Lang that he was under arrest.

The defense raised the issue again at the jury instruction conference. The parties clarified that the instruction would apply only to the murder and attempted murder charges. The court sustained its earlier ruling, conceding that whether the police action was lawful was "a legitimate issue" in the case, but it was an issue of law to be determined by the court.

The jury convicted Lang as charged. In its motion for a new trial, the defense argued, "The [c]ourt erred in failing to instruct the jury on self-defense and in its finding that applicability of the exception to Iowa Code [section] 704.2A(2)(c) was not a question for the jury." Again, the court determined the officers acted lawfully, that the lawfulness of their action was a question of law, and the instruction was unwarranted.

Lang appeals. We granted oral argument.

## II. Standard of Review

"We review challenges to jury instructions for correction of errors at law." *State v. Ross*, 986 N.W.2d 581, 584 (Iowa 2023). But "when a jury instruction implicates a constitutional right, our review is de novo." *State v. Green*, 896 N.W.2d 770, 775 (Iowa 2017).

## III. Analysis

Lang argues that the district court should have instructed the jury on justification and that failure to do so violated his right to present a defense.[2] "Although the burden to disprove self-defense rests with the State, the defendant bears the burden of demonstrating that the record contains sufficient evidence to support an instruction on this issue." *State v. Ceasar*, 585 N.W.2d 192, 194 (Iowa 1998), *overruled on other grounds by State v. Bruegger*, 773 N.W.2d 862, 871 (Iowa 2009).

---

[2] Lang grounds his constitutional claim on the Fourteenth Amendment. *See State v. Fox*, 491 N.W.2d 527, 530–31 (Iowa 1992) ("The right to present a defense is rooted in the Sixth Amendment right to compulsory process. . . . The right to present a defense is so fundamental and essential to a fair trial that the Supreme Court has accorded it the status of an incorporated right in the due process clause of the Fourteenth Amendment . . . .").

The self-defense statute provides: "A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any actual or imminent use of unlawful force." Iowa Code § 704.3. And, as mentioned above, section 704.2A adds that a person can use deadly force to defend themself or another in a place they are lawfully present, such as their home, as long as they have not engaged in illegal activity.

But force cannot be used to repel an arrest even if the arrest is unlawful. *See* Iowa Code § 804.12; *see also State v. Wilson*, 968 N.W.2d 903, 917–19 (Iowa 2022) (finding the original entry into the home was unlawful and the resulting drug evidence must be suppressed and thus the arrest itself was unlawful while also affirming the conviction for resisting the arrest); *State v. Thomas*, 262 N.W.2d 607, 611 (Iowa 1978) (abrogating the common law right to resist unlawful arrest and announcing the rule: "[A] person may not resist an arrest reasonably effected by one whom the arrestee knows or has good reason to know is a peace officer, despite legality or illegality of the arrest").

Use of force by police while making an arrest is also governed by statute. "A peace officer or other person making an arrest . . . may use such force as is permitted" by the use-of-force statues. Iowa Code § 704.12. Those provide, "A peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest." *Id.* § 804.8(1). A warrant is not always required to make an arrest. *Id.* § 804.7 (explaining that a police officer may make an arrest without a warrant where "a public offense has in

fact been committed" and "the peace officer has reasonable grounds to believe that the person to be arrested has committed it").

And, under some circumstances, peace officers may enter a home to make an arrest even without a warrant:

> If a law enforcement officer has reasonable cause to believe that a person whom the officer is authorized to arrest is present on any private premises, the officer may upon identifying the officer as such, demand that the officer be admitted to such premises for the purpose of making the arrest. If such demand is not promptly complied with, the officer may thereupon enter such premises to make the arrest, using such force as is reasonably necessary.

*Id.* § 804.15.

But Lang argues that neither these statutes nor Iowa caselaw answers a key question: does an arrestee retain a right to self-defense when law enforcement uses such excessive force that the arresting officers are no longer acting "in the lawful performance of [their] official duties"? *Id.* § 704.2A(1), (2)(c). Lang contends, "The right to resist an *illegal arrest*, which is abrogated by section 804.12, must thus be distinguished from the right to defend oneself against *unlawful force*." He also reasserts that whether police action is "unlawful" is a fact question for the jury.

To support his appellate claims, Lang relies on *State v. Bedard*, 668 N.W.2d 598 (Iowa 2003), and *State v. Brown*, No. 09-1862, 2010 WL 4105572 (Iowa Ct. App. Oct. 20, 2010). In *Bedard*, police received a complaint that an intoxicated man was starting fights at a bar. 668 N.W.2d at 599. An officer approached Bedard, who matched the description, at a nearby grocery store and grabbed his arm. *Id.* Bedard took a swing at the officer, who arrested him for assaulting a police officer. *Id.* On appeal, our court found the arrest violated Bedard's

constitutional rights and was "unlawful," so Bedard's self-defense was justified. *State v. Bedard*, No. 01-0956, 2003 WL 288985, at *4 (Iowa Ct. App. Feb. 12, 2003), *rev'd on further review by Bedard*, 668 N.W.2d at 598. On further review, the State argued that section 804.12 prevented Bedard from using force to resist the arrest. *Bedard*, 668 N.W.2d at 600. The supreme court bypassed this argument and decided "even if the attempt to detain Bedard was unlawful" and section 804.12 did not apply to the "investigatory stop," "the assaultive conduct on which Bedard's conviction was based was not reasonable force necessary to defend himself." *Id.* Thus, Lang argues the supreme court left open whether a person can *reasonably* resist unlawful detention or arrest.

Lang also cites *Brown*, where police officers entered a suspect's home in violation of the Fourth Amendment. 2010 WL 4105572, at *3. After the entry, Brown fought with the officers and was charged with assault. *Id.* Brown argued self-defense, and the jury received a justification instruction without objection from either side. *Id.* But Brown objected to another instruction on the unavailability of self-defense when resisting an arrest, which was almost identical to Iowa Code section 804.12. *Id.* Brown argued he was not charged with resisting arrest, and the instruction would confuse the jury because he was not under arrest when the alleged assault occurred. *Id.* Our court found that whether Brown was under arrest was a fact question. *Id.* at *4. If he was, then the resisting-arrest instruction became relevant to the assault charge and it was proper to give it. *Id.* Lang takes *Brown* to mean that a justification defense is "legally available" even in the context of a police interaction.

With those cases as a framework, Lang claims the issue on appeal is whether and when an officer's actions constitute "unlawful force." *See* Iowa Code § 704.3 ("A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any actual or imminent use of unlawful force."). Based on *Bedard* and *Brown*, he argues that he could defend himself because the police allegedly used excessive force against him. And the court should have given a justification instruction. On appeal he urges that he used self-defense not to resist arrest but to resist excessive force. Lang recognizes that Iowa has abrogated the common law right to resist an unlawful arrest. *See Thomas*, 262 N.W.2d at 611 ("[A] far more reasonable course is to resolve an often difficult arrest legality issue in the courts rather than on often hectic and emotion laden streets."). But he argues that, while liberty can be restored through the legal process, "life and limb cannot be repaired in a courtroom," citing *State v. Nunes*, 546 S.W.2d 759, 762 (Mo. Ct. App. 1977).

The State contends Lang did not preserve error on his appellate claim. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). We agree. After reviewing the pleadings and the discussion of the justification issue before, during, and after trial, we find no defense argument that the use of excessive force by the officers justified Lang's conduct. Instead, the defense focused on the lawfulness of the police presence in Lang's house. During the motion in limine hearing, defense counsel summarized, "Our position is that self-defense is available, stand your ground says that self-defense is available. There's a factual question as to whether or not . . . police officers/law enforcement officers were there lawfully, we should be able to ask about it."

The prosecutor disputed that interpretation of the stand-your-ground law:

> What that means is if a police officer's off duty, obviously it doesn't apply if he's not doing his official duties. . . . [Y]ou don't get to say you don't have a warrant and I get to blast you. That's not how the law works. . . . And for them to get to ask the question, did they have a warrant, that's not for the jury to decide. That's a legal question.

During trial, Lang made one offer of proof to persuade the court to give a justification instruction. Counsel asked Deputy Broome whether police had a search or arrest warrant, why not, and what circumstances existed to excuse the lack of a warrant.[3] Counsel did not ask about the officers' use of force, nor did the defense call any other witnesses to discuss what constitutes excessive force.

At the jury instruction hearing, the defense argued that the evidence raised an inference that Lang was acting in self-defense. The defense again insisted that "whether an arrest was taking place" was a fact question. Citing section 804.7, the State responded, "They can arrest somebody without a warrant," and the officers here performed their "official duties" under the stand-your-ground statute. In its ruling the district court did not consider the degree of force used by the officers. Rather, the court's reasoning was limited to the legal question of whether police acted lawfully to make an arrest.

Whether the police use of force was excessive or unreasonable under the circumstances is a question Lang raises now for the first time. Lang did not preserve his claim that excessive police force formed the root of his self-defense. The district court did not rule on that question. So we do not address it. *See State*

---

[3] Broome also agreed that no one explicitly announced that Lang was under arrest. Broome testified he thought a reasonable person under the circumstances would understand the officers wanted to arrest him and that suspects are less likely to come out of hiding if they think they will be taken into custody.

*v. Cyrus*, 997 N.W.2d 671, 683 n.7 (Iowa 2023) (declining to address issue raised for the first time on appeal). And because Lang raises no other issues in the appeal, we affirm his convictions.

**AFFIRMED.**