**UNITED STATES of America**

v.

**David L. SIMMONS, Appellant.**

**No. 81–1319.**

United States Court of Appeals, District of Columbia Circuit.

Following Remand of Record.

Decided Feb. 1, 1983.

A. Franklin Burgess, Jr., Washington, D.C., was on the brief for appellant.

Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and Charles J. Harkins, Jr., Asst. U.S. Atty., Washington, D.C., were on the brief for appellee.

Before MacKINNON and EDWARDS, Circuit Judges, and ROBB, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge MacKINNON.

Dissenting opinion filed by Circuit Judge HARRY T. EDWARDS.

MacKINNON, Circuit Judge:

Simmons appeals his conviction on two drug counts, i.e., (1) unlawful distribution, and (2) unlawful possession of a controlled substance with intent to distribute. He contends that his convictions should be reversed because he was deprived of the favorable testimony of a witness (Johnson) by threats of the prosecutor. We found the trial record to be insufficient to rule on the contention and remanded the record to the trial court for a full hearing on the claim. The transcript of that hearing covers 300 pages, which this writer has read complete-

ly. The extensive findings of fact and conclusions of law by the trial judge concluded "that Simmons had failed to demonstrate that O'Malley's [the prosecutor] actions substantially prejudiced his right to a fair trial. Therefore he is not entitled to a new trial." We agree.

## I

In reaching its conclusion the trial court stated, *inter alia:*

The confrontation between O'Malley and Johnson did not deprive Simmons of a key defense witness. It appears to the Court that Johnson decided to assert the Fifth Amendment on the advice of his counsel, in the hopes of securing a lighter sentence. The meeting with O'Malley may have angered Johnson, but it did not compel his decision not to testify. Moreover, even if Johnson had not raised the Fifth Amendment, he probably would not have been called as a defense witness. Simmons' attorney questioned the value of Johnson's testimony from the outset. After meeting with Johnson and discussing with him the contents of his affidavit, *Simmons' attorney* became concerned that Johnson would perjure himself if put on the stand to testify on behalf of Simmons. Simmons' attorney testified that he would never put a witness, who might perjure himself, on the stand. Thus, it is unlikely that Johnson would ever have been called as a defense witness.

Moreover, O'Malley's behavior at the meeting with Johnson did not rise to the level of misconduct found in *Webb v. Texas,* 409 U.S. 95 [93 S.Ct. 351, 34 L.Ed.2d 330] (1972), or *United States v. Smith,* 478 F.2d 976 (D.C.Cir.1973). Unlike the judge in *Webb,* O'Malley had ample reason to believe that Johnson would commit perjury if called upon to testify on behalf of Simmons. Johnson had described Simmons' involvement in the drug transaction in detail to O'Malley at several prior meetings. Thus, O'Malley had reason to believe that Johnson's affidavit, allegedly exculpating Simmons, and Johnson's proposed testimony in defense of Simmons, were false. Unlike the prosecutor in *Smith,* O'Malley did not threaten Johnson with prosecution for additional charges if he testified on behalf of Simmons. He merely warned Johnson of the dangers of testifying falsely. As the Court above noted "it is hardly a threat for a prosecutor to advise a potential witness, who is telling two stories with respect to a defendant's criminal involvement, that he might be prosecuted for perjury if he testifies falsely."

*United States v. Simmons,* Crim. No. 80–504, slip op. at 7–8 (D.D.C. July 28, 1982) (emphasis added) (quoting *United States v. Simmons,* 670 F.2d 365, 371 (D.C.Cir.1982) (per curiam)).

The remand transcript supports the position of the government that Simmons was *not* denied the testimony of a witness by prosecutorial misconduct. In sum, the evidence indicates that one reason Johnson did not testify in behalf of Simmons, as Simmons requested (Tr. 101), was because Simmons' counsel determined that for Johnson to testify for Simmons would result in Johnson testifying to what "wasn't true" and Simmons' counsel did not want Johnson to commit perjury. Another reason Johnson did not testify was because his counsel advised him that he had a Fifth Amendment right *not* to testify which he chose to exercise. Simmons' lawyer did not indicate at trial that he would not call Johnson as a witness because he already knew that Johnson was going to claim his Fifth Amendment privilege. (Tr. 93–94). Thus, Simmons was not deprived of Johnson's testimony because of threats by the government's prosecutor.

## II

The issue as outlined by the court on the remand was whether Simmons was deprived of a witness by reason of the (improper) activities of the Assistant United States Attorney. (Tr. 288). The witness in question was Oscie W. Johnson. For a considerable period of time after his arrest Johnson had been cooperating with the

government and had agreed to testify against Simmons and his other codefendants and give the government information about a third big drug dealer.

However, shortly before trial, three men and a woman in some unknown manner succeeded in gaining entry to visit Johnson in jail. Thereafter, on January 6 Johnson signed an affidavit stating that Simmons had no knowledge of the narcotics transaction. Such statement is not completely exculpatory of Simmons because there was other reliable evidence from other reputable eyewitnesses that conclusively linked Simmons *by his acts* to the drug transaction, to-wit: Simmons was at the desk *attempting to get the money for the drugs* when he was arrested; and he had been observed earlier *handing the bag containing the drugs* to one of his accomplices.

At the remand hearing, Johnson admitted on direct examination by Simmons' lawyer that during the discussions with the government shortly after his arrest he had told the prosecutor, O'Malley, that Simmons was involved in the crime. (Tr. 10). He said he did this because of the plea bargain that he was offered and that it would lighten his sentence. Thus, from the outset Johnson was going to be a government witness against Simmons. Johnson's lawyer was present when he made these disclosures concerning Simmons. *At that time the lawyer agreed that subsequent relations between the U.S. Attorney and Johnson could take place in his absence.* Thus when the prosecutor had Johnson come to his office and talked to him briefly without Johnson's lawyer being present, he was acting in accordance with authority given him by Johnson's counsel.

Johnson further testified that on October 29th three men and a woman were admitted to the D.C. jail, apparently from the halfway house, or posing as his lawyers. (Tr. 36–42). They conferred in the "legal visits" compartment. (Tr. 41). Johnson may have said he thought these people were lawyers (Tr. 41) and after that he spoke to his family and told them he was in great fear for his life. (Tr. 39, 41–42). After the people were admitted on the 29th of October, Johnson also told O'Malley through his attorney that he was in fear for his life. He was then transferred out of the D.C. jail (Tr. 42) and placed in protective custody at Leesburg, Virginia. (Tr. 40, 42). Johnson did tell the people from the halfway house (who saw him in jail) that "Mr. Simmons wasn't involved, he [Simmons] was only going to the hotel to encounter some women." (Tr. 43).

Apparently the affidavit was a product of the October 29th conversation with the three men and the woman. Mr. Abbenante (*Simmons' lawyer*) interrogated Johnson about the affidavit and at the remand hearing testified on direct examination:

[W]hen I left my discussion with Mr. Johnson about the affidavit *it occurred to me that what was contained in the affidavit wasn't true.*

Q. Well, now, you made that judgment on the basis of what he told you?

A. Yes.

(Tr. 93) (emphasis added). However Simmons' lawyer did not go "back into court and say that [he] didn't want to call Mr. Johnson . . . [b]ecause [he] knew that Johnson was going to assert the Fifth Amendment privilege and there was no need to even address that issue in [his] mind." (Tr. 93–94).

Thus, *on the testimony of Simmons' own lawyer,* his client was *not* deprived of Johnson as a witness because of any threats by the government's prosecutor for two reasons: (1) because Johnson took the Fifth Amendment on the advice of his counsel and (2) because *Simmons' lawyer* had decided it would constitute perjury if Johnson testified as Simmons (Tr. 101) wanted him to and Simmons' lawyer was not going to be a party to perjury. (Tr. 103).

Simmons' convictions are therefore affirmed.

*Judgment accordingly.*

HARRY T. EDWARDS, Circuit Judge, dissenting:

For the reasons stated in my original opinion in this matter,[1] I dissent.

The District Court, on remand, concluded that the prosecutor's conduct neither denied Simmons' right to call a defense witness nor deprived him of a fair trial. I believe that the record from below makes it plain that these conclusions are clearly erroneous. Appellant here asserts, quite convincingly, that the prosecutor's threats converted Johnson from a willing witness to a reluctant one;[2] that the unrefuted evidence demonstrates that Simmons' counsel intended to call Johnson as a witness at least until two days *after* the prosecutor threatened Johnson; that the record does not support a finding that Simmons' counsel decided not to call Johnson because he thought Johnson might commit perjury;[3] that the prosecutor's conduct plainly interfered with Johnson's free choice whether to testify; and that the claim that Johnson's testimony would not have aided Simmons is impossible to resolve definitively and, in any event, is irrelevant to the disposition of this matter.[4] In light of the record evidence in this case, and given our decision in *United States v. Smith, see* note 4 *supra,* this court must, at a minimum, reverse and remand for a new trial.[5]

To the extent that the majority's conclusion rests on a finding that the prosecutor's conduct did not deprive Simmons of a witness, my disagreement with it is based primarily on my reading of the facts of the case. I would only add that serious doubts concerning the factors motivating a witness' decision not to testify should be resolved in favor of criminal defendants to protect the integrity of the judicial process. To the extent that the majority suggests that prosecutorial misconduct—including harassment of potential defense witnesses—will be condoned unless the defendant shows that he would have been acquitted but for the challenged behavior, it rests on questionable legal grounds. I find this contention, which is something akin to a warped rule of "harmless error," to be quite extraordinary and totally at variance with existing constitutional principles. Even the majority previously has recognized that "[t]he right of a defendant to establish a defense by presenting his own witnesses is a *fundamental element of due process of law.*" *United States v. Simmons,* 670 F.2d 365, 368 (D.C.Cir.1982) (per curiam) (emphasis added).[6] Where this right is infringed by the prosecutor or the court, "it cannot be

1. *United States v. Simmons,* 670 F.2d 365, 372 (D.C.Cir.1982) (Edwards, J., dissenting).

2. The record evidence makes it clear that Johnson decided not to testify, and to invoke the Fifth Amendment, only after *his* confrontation with the prosecutor.

3. The *most* that can be gleaned from the record is that, after Johnson decided not to testify, Simmons' counsel was relieved of the decision whether to call Johnson as a witness.

4. In *United States v. Smith,* 478 F.2d 976 (D.C. Cir.1973), this court noted that " '[a] prosecutor may impeach a witness in court but he may not intimidate him—in or out of court.' " *Id.* at 979 (quoting *People v. Pena,* 383 Mich. 402, 406, 175 N.W.2d 767, 768 (1970)). The court in *Smith* also rejected the suggestion that a prosecutor's alleged good motives are a defense to prosecutorial misconduct: "If the prosecutor thought the witness should be advised of his rights then he should have suggested that the court explain them to [the witness]. The matter would then have been presented to [the

witness] by the court without any threats or implication of retaliation." 478 F.2d at 979.

5. The considerable emphasis that the majority places on the fact that Johnson's lawyer agreed to allow discussions between Johnson and the Assistant United States Attorney is, to say the least, puzzling. Although Johnson's *first* attorney did *tentatively* consent to such an arrangement during the process of negotiating a plea, Transcript ("Tr.") 119, 139, Johnson subsequently sought and received new counsel and refused to consummate the negotiated agreement, *United States v. Simmons,* Crim. No. 80–504, mem. op. at 3 (D.D.C. July 28, 1982); Tr. 128–29. As the majority implicitly concedes, the prosecutor had no right to summon Johnson and talk to him without his lawyer being present.

6. *See* Clinton, *The Right To Present A Defense: An Emergent Constitutional Guarantee in Criminal Trials,* 9 Ind.L.Rev. 711, 848–50 (1976).

held that the jury would not have believed the [defense witness'] testimony or that the error is harmless." *United States v. Morrison,* 535 F.2d 223, 228 (3d Cir.1976).[7]

To my mind, the result reached in this case is plainly at odds with the constitutional guarantee of a fair trial. The decision of the District Court should be reversed and the case remanded for a new trial.

**7.** In *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (per curiam), the majority, despite the existence of what the dissent termed "apparently overwhelming evidence of guilt, offset only by a bare allegation of prejudice," *id.* at 99, 93 S.Ct. at 354 (Blackmun, J., dissenting), saw no need to inquire into the potential value of the lost witness' testimony to the defendant's case. It concluded, rather, that "the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law . . . ." *Id.* at 98, 93 S.Ct. at 353.