STATE of Iowa, Appellee,

v.

Fred L. RUBLE, Jr., Appellant.

No. 84–714.

Supreme Court of Iowa.

July 31, 1985.

Charles L. Harrington, Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Rebecca L. Claypool, Asst. Atty. Gen., and Patrick C. McCormick, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

LARSON, Justice.

Alleged accomplices of the defendant testified for the State in the defendant's prosecution for kidnapping in the first degree, assault while participating in a felony, and conspiracy to commit murder. The first accomplice to testify was arrested because his testimony was claimed to have been false, thus breaching a plea agreement under which he was to testify truthfully as to the facts surrounding the crimes. Also, in the defendant's later cross-examination of another of these accomplices, the defendant was precluded from inquiring about the witness's "fear" of the prosecuting attorney because of charges still pending against the witness. On the defendant's appeal, we affirm.

The evidence showed the defendant, with several others, beat, kidnapped and ultimately killed Michael Felton. At trial, the State called several of these accomplices as witnesses, including Bernie Bahmer, James Simeon, Pete Gentile, and Kevin Babb, each of whom either participated in or was present during the beating of Felton. Each of these witnesses, pursuant to plea bargain agreements, had agreed to testify truthfully with regard to the events before, during and after Felton's murder.

Bernie Bahmer was the first of the witnesses to testify for the State. Parts of his testimony did not support the State's case and were inconsistent with two of his previous statements. The county attorney, having concluded that Bahmer had breached his plea agreement, had Bahmer arrested before any of the other accomplices testified. The record shows that news of the arrest was common knowledge in the courthouse, and one juror later testified that "the whole courthouse was buzzing about it." No other details, such as the grounds for the arrest, were related by the juror.

The defendant moved for mistrial, claiming:

The reason I am moving for mistrial is for the reason that my client's rights are highly prejudiced by that move, for the reason there are still three other witnesses who are to testify who have plea bargains of the same nature. So that by doing this before they testify, Mr. Hisey [the assistant county attorney] . has

threatened witnesses by simply saying to them, "you testify the way I want you to testify or I will cancel your plea bargain agreements as I did with Bernie Bahmer," so that the witnesses in the middle of the trial will be under great pressure or duress as a result of this action so that Mr. Ruble's rights have been—are highly prejudiced by this action. Secondly, I say just for mere fact that it was done is sufficient prejudice; however, I cannot corroborate it by talking to the remaining witnesses, for the reason if I ask them if they knew of the fact that Mr. Hisey filed an arrest for Bernie Bahmer, they would know that and I, myself, then would be informing them of the fact, so that I cannot inquire of them without prejudicing the defendant myself. Thirdly, even if Mr. Hisey says he didn't tell anybody, if a warrant has been issued, its very obvious through police channels, inquiries made as to his whereabouts, things like that, so that Mr. Bahmer or friends or relatives or other people will obviously know about it. And the evidence is clear in this case that all the people involved are friends, so it is presumable if one knows, all would know.

The defendant's request to voir dire the jurors to determine whether they had actual knowledge of Bahmer's arrest was denied, but subsequent inquiry after the verdicts were returned indicated that at least some of them knew of the arrest prior to their deliberation. In his motion for new trial, the defendant alleged that the arrest of Bahmer "had the effect of the jury believing that he lied on the stand so as to deny this defendant a fair trial."

After Bahmer was arrested, James Simeon testified. His testimony in some respects supported the State's case but, in other respects, it did not. On cross-examination, Ruble attempted to establish that Simeon had an interest in pleasing the State, through favorable testimony, in order to avoid arrest for his part in the crimes. The trial court sustained the State's objection, and Simeon was not able

to further relate the facts bearing on his motives.

On appeal, defendant urges two grounds for reversal: (1) the trial court abused its discretion in overruling defendant's motion for a mistrial based upon the prosecutor's actions in arresting Bernie Bahmer prior to the testimony of the other witnesses; and (2) the trial court erred in sustaining the State's objections to defendant's cross-examination of the State's witness, Simeon, regarding his interest in testifying.

### I. *Prosecutorial Misconduct.*

Defendant first contends the arrest of the witness Bahmer constituted misconduct on the part of the prosecuting attorney and that he was prejudiced by it.

■ To prevail on a matter of prosecutorial misconduct, the defendant must show both the misconduct and that he was prejudiced by it. *See State v. Williams,* 315 N.W.2d 45, 55 (Iowa 1982); *State v. Love,* 302 N.W.2d 115, 119 (Iowa 1981); *State v. Lyons,* 210 N.W.2d 543, 549 (Iowa 1973); *State v. Harless,* 249 Iowa 530, 536, 86 N.W.2d 210, 213–14 (1957), *cert. denied,* 357 U.S. 908, 78 S.Ct. 1154, 2 L.Ed.2d 1158 (1958).

■ Trial courts are vested with broad authority to determine whether prejudice has resulted from an act of prosecutorial misconduct. *Williams,* 315 N.W.2d at 55 (citing *State v. Vickroy,* 205 N.W.2d 748, 750 (Iowa 1973)). We do not overturn trial court rulings in the absence of a showing of abuse of discretion. *Love,* 302 N.W.2d at 119; *State v. Harrington,* 284 N.W.2d 244, 251 (Iowa 1979); *State v. Trudo,* 253 N.W.2d 101, 106 (Iowa), *cert. denied,* 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977). "Abuse of discretion is shown only when it is demonstrated that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Williams,* 315 N.W.2d at 55 (quoting *Trudo,* 253 N.W.2d at 106). With these general principles in mind, we take up defendant's complaint against the prosecutor.

■ It is true that a prosecuting attorney may not threaten or intimidate witnesses. *See State v. Ivy*, 300 N.W.2d 310, 314 (Iowa 1981). Some jurisdictions hold that intimidation of witnesses is a ground for reversal even without a showing of prejudice. *See United States v. Hammond*, 598 F.2d 1008, 1013 (5th Cir.1979); *United States v. Morrison*, 535 F.2d 223, 228 (3rd Cir.1976); *United States v. Thomas*, 488 F.2d 334, 336 (6th Cir.1973) (per curiam); *see also United States v. MacCloskey*, 682 F.2d 468, 479 (4th Cir.1982); *Berg v. Morris*, 483 F.Supp. 179, 182 (E.D.Cal.1980).

■ The problem with the defendant's argument here is not whether prejudice existed or whether the conduct of the attorney in causing the arrest of Bahmer amounted to misconduct. The issue is whether there was intimidation. The defendant made no showing that any of the other witnesses were aware of Bahmer's arrest, or, if they were, that they were aware of the particular reason for the arrest. In view of the lack of evidence to support this argument, it would require us to assume that the other witnesses knew of the arrest and knew of the grounds for the arrest in order to determine that there had been intimidation. The record simply does not support that finding. Ruble complains that he could not develop this evidence because if he inquired of the remaining witnesses as to their knowledge of Bahmer's arrest he would in effect poison their testimony himself. On the other hand, he did not investigate the possibility of an in camera inquiry into these matters by the court or any other means of developing the record. In view of this fact, we cannot assume the record would show that the other witnesses knew of the arrest and the grounds for it.

Moreover, the witnesses who testified after Bahmer's arrest apparently had not been intimidated by the arrest, if the substance of their testimony is any indication. These witnesses, like Bahmer, testified to some facts which were inconsistent with the State's view of the case. Two of them testified, as Bahmer had, that the group never conspired or made plans to kill the victim and that there had been no mention of a gun. This testimony was in direct conflict with that which the State apparently had expected to obtain from them and provides a strong indication that the witnesses were not in fact intimidated by the arrest of Bahmer.

We find no merit in this assignment.

II. *Cross-Examination of State's Witness.*

James Simeon, taking the stand for the State, testified the defendant was one of those involved in the beating of Felton prior to his death, and that he thought he remembered someone mentioning getting a gun while Felton was still in the house. On cross-examination, defense counsel attempted to establish that Simeon had an interest in furnishing evidence favorable to the State in order to avoid criminal charges. The following colloquy transpired:

[DEFENSE COUNSEL]: Q. Are you scared of Mr. Hisey? A. I guess so.

Q. You know that if he doesn't think your telling the truth, he can file charges against you?

MR. HISEY: Object. There's no evidence in the record whatsoever that anything is contingent on whether or not I think he's telling the truth.

THE COURT: Sustained.

MR. McCOY: If someone thinks you're not telling the truth, you know charges can be filed against you, don't you?

MR. HISEY: Objection for the same reason, your honor. He's just broadening the scope of question.

THE COURT: Sustained.

Defendant now claims that the trial court's exclusion of the interest evidence violated his right to a fair trial.

Generally, the scope and extent of cross-examination rests in the sound discretion of the trial court. *State v. Menke*, 227 N.W.2d 184, 191 (Iowa 1975). The court, however, especially in a case where defendant is charged with a grave offense, should

permit the defendant wide latitude in seeking to show the bias or interest of all alleged accomplices or other witnesses, who testify for the prosecution. *See State v. Armento*, 256 N.W.2d 228, 229 (Iowa 1977).

It is said that

[t]he rule allowing great or liberal latitude in the cross-examination by defendant of a witness for the prosecution, with respect to his motive for testifying, is especially applicable where such witness is a codefendant or accomplice of the accused ... and whose testimony against defendant may be influenced by a promise of, or hope or expectation of, immunity or leniency with respect to this case as a consideration for testifying against defendant.

*Id.* at 229, quoting Annot., 62 A.L.R.2d 610, 624 (1958). *See also State v. Carney*, 236 N.W.2d 44, 46 (Iowa 1975).

■ We believe the court should have allowed the witness to answer the question relating to his credibility; we do not, however, believe it was reversible error in this case to sustain the objection.

During defense counsel's previous cross-examination of Simeon, he was allowed to testify in regard to the same issue. Defense counsel covered the subject of Simeon's plea agreement and the potential for criminal charges in the event he did not testify truthfully. The record reflects the following exchange:

[DEFENSE COUNSEL]: Q. And at that time were you aware then, or did you know that, or did they tell—someone tell you that if you talked to the police, you would have this plea bargain? A. Yea.

Q. And what was this plea bargain? A. Tell everything you know the best that you remember.

Q. And if you would do that, then no charges would be brought against you; right? A. Correct.

This testimony came in, on cross-examination, without objection. We have held that prejudicial error does not occur when a particular line of cross-examination objected to and excluded by the trial court was merely repetitious of testimony previously received. *See State v. O'Callaghan*, 157 Iowa 545, 551–52, 138 N.W. 402, 405 (1912) (no prejudice to defendant from sustaining an objection to question about whether witness had a charge filed against him when from other testimony it was clear that the witness had been promised immunity in return for his testimony.)

We conclude under the circumstances of this case it was not reversible error to sustain the objection to Simeon's cross-examination.

We find no basis for reversal.

AFFIRMED.