**STATE of Iowa, Plaintiff–Appellee,**

v.

**Richard Lynn PETERSON, Defendant–Appellant.**

**No. 93–1192.**

Court of Appeals of Iowa.

March 30, 1995.

er narcotics, were found in the car. Charges were filed against both McCarthy and Peterson. McCarthy entered into a plea bargain, pled guilty, and was sentenced. As a part of his plea bargain, McCarthy signed an affidavit prepared by the county attorney stating he and Peterson both knew marijuana was in the car and intended to sell it. McCarthy was to testify later that he was told part of the plea agreement was he would not have to testify for the State or against Peterson.

Peterson elected to be tried by the court. The State, anticipating Peterson would testify at his trial, brought McCarthy, from where he was incarcerated, as a potential rebuttal witness. The county attorney talked to McCarthy during the trial and McCarthy told the county attorney if he were called as a witness, he would give testimony inconsistent with his sworn affidavit.

The county attorney notified Peterson's attorney McCarthy might provide exculpatory evidence. Peterson's attorney interviewed McCarthy. Peterson's attorney was to tell the court after the interview that he expected McCarthy to testify Peterson did not know the marijuana was in the car and Peterson had no intent to deliver the marijuana.

Peterson called McCarthy as a witness. McCarthy said before he testified he wanted to consult with an attorney because he might be charged with perjury and he did not want to testify before he had that opportunity.

The court appointed an attorney to represent McCarthy and, after McCarthy consulted with the attorney, he was questioned on the witness stand about whether Peterson knew there was marijuana in his car and McCarthy declined to answer on grounds that it might incriminate him.

The court then asked the county attorney what the State would do if McCarthy testified as Peterson's attorney expected he would and the county attorney replied: "We have not promised to file perjury charges if he testifies. Our position is that if he testified today in material variance with Exhibit

Linda Del Gallo, State Appellate Defender, and Annette L. Hitchcock, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber and Charles N. Thoman, Asst. Attys. Gen., and Kirk E. Goettsch, Co. Atty., for appellee.

Considered by HAYDEN, P.J., and SACKETT and HABHAB, JJ., but decided en banc.

HABHAB, Judge.

Defendant-appellant Richard Lynn Peterson was convicted of possession with intent to deliver in violation of Iowa Code section 204.401(1)(d) (1991)[1] and possession of a taxable substance without an excise stamp in violation of Iowa Code section 421A.12 (1991).[2] Peterson contends his rights to due process were violated by the State's intimidation of a defense witness, Tary McCarthy. We affirm.

Peterson was riding in a car owned and operated by McCarthy when the car was pulled over for a seat belt violation and subsequently searched. Three large bags of marijuana, as well as small quantities of oth-

1. Iowa Code section 204.401(1)(d) is now codified at Iowa Code section 124.401(1)(d) (1993).

2. Iowa Code section 421A.12 is now codified at Iowa Code section 453B.12 (1993).

101 [his statement] we would investigate filing perjury charges."

The court then decided to allow McCarthy to assert his Fifth Amendment privilege. Later in the trial, McCarthy was asked by Peterson's attorney if he had, when not under oath, made statements different than some of the statements in the affidavit. The county attorney said McCarthy, in answering the question, might subject himself to a charge of perjury and the court again allowed McCarthy to invoke the Fifth Amendment.

After several more questions directed to Peterson's knowledge of the drugs in the car, Peterson's attorney asked the court to grant McCarthy use immunity so he could testify truthfully in the trial or the trial court grant a mistrial because of prosecutorial misconduct. Peterson's attorney advanced the prosecutors improperly obtained the plea and affidavit from McCarthy and threatened to charge him with perjury if his testimony differed from his prior statement.

The trial court refused to grant McCarthy use immunity and overruled Peterson's motion for a mistrial. On appeal, Peterson renews his claims.

■ I. *Scope of Review.* Because Peterson raises constitutional issues, our review is de novo. We independently evaluate the totality of the circumstances as evidenced by the whole record. *State v. Fox,* 491 N.W.2d 527, 530 (Iowa 1992).

■ II. *Prosecutorial misconduct.* Peterson contends his due process rights were violated due to prosecutorial misconduct. For there to be a denial of due process due to prosecutorial misconduct, there must be a showing that (1) the prosecutorial misconduct kept the witness from testifying (intimidation); and (2) the defendant was prejudiced as a result. *Fox,* 491 N.W.2d at 532.

### A.

There are a number of basic ingredients of due process of law that are now so firmly established that separate citations to support the same are no longer necessary. As the United States Supreme Court, in *In re Oli-*

*ver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), observed:

A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense-a right to his day in court-are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witness against him, to offer testimony, and to be represented by counsel.

*Oliver,* 333 U.S. at 273, 68 S.Ct. at 507–08, 92 L.Ed. at 694 (footnote omitted). In addition, there are an endless line of cases, both state and federal, that have held due process requires that the accused have the assistance of counsel for his defense, that he be confronted with the witnesses against him, and that he have the right to a speedy and public trial.

■ It is equally as fundamental to our system of jurisprudence that an accused has the right to compulsory process for obtaining witnesses in his or her favor. As the United States Supreme Court stated in *Washington v. Texas:*

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1966). This right to present a defense is rooted in the Sixth Amendment right to compulsory process. *Fox,* 491 N.W.2d at 530.

### B.

Turning to the contention of the defendant that McCarthy was intimidated into not testifying, we return to *Fox,* where Justice Lavarato, speaking for a unanimous court, made this observation: "We concede there is a fine line between reminding a defense witness about the consequences of committing perjury and driving that witness from the witness

stand." *Id.* at 533. It is indeed a "fine line" and, without intending to cite all the carefully crafted decisions in this area of the law, we look to the extensive discussion of cases appearing in Annotation, *Admonition Against Perjury or Threats to Prosecute Potential Defense Witnesses, Inducing Refusal to Testify, as Prejudicial Error*, 88 A.L.R.4th 388 (1991) and Supplement (1993) [hereinafter *Admonition* ].

From our review of those cases, it is safe to conclude that the circumstances giving rise to alleged threats and intimidations are boundless. Rather obviously, the treatment given to those cases vary depending upon their separate and individual circumstances.

In determining, first, whether a prosecutor has committed prejudicial error by admonishing or threatening a prospective defense witness, it is helpful to distinguish cases in which the prosecutor communicated the admonition or threat directly to the witness (§§ 3–6) from those in which the prosecutor funneled the information through a third party, such as the attorney for the defendant, the witness' attorney, or the trial judge (§§ 7–10). Among the former cases, moreover, those in which the prosecutor advised the witness that prosecution for perjury or another offense was possible (§§ 3–4) can be distinguished from those in which the prosecutor characterized the negative consequences of the witness' testimony as certain (§§ 5–6).

Annotation, *Admonition*, 88 A.L.R.4th at 394.

There are a line of cases where a prosecutor or trial judge has told a potential defense witness that the witness *would* face prosecution for perjury or some other charge if he or she testified for the defendant and, thereafter, the witness refused to testify. In those instances, a majority of courts have found that such action constituted misconduct which, if it prejudiced the defendant, justified reversal. *Id.* at 393–97, 405–16, 427–31, 447–48. This group of cases includes those on which Peterson relies: *Webb v. Texas*, 409 U.S. 95, 96–98, 93 S.Ct. 351, 352–53, 34 L.Ed.2d 330, 332–33 (1972) (trial judge told defendant's witness, an inmate, that if he lied on the stand, "the court will personally see that your case goes to the grand jury and you will be indicted for perjury.... It will also be held against you in the penitentiary when you're up for parole."); *United States v. Henricksen*, 564 F.2d 197, 198 (5th Cir. 1977) (per curiam) (prosecutor told codefendant that he "would" be tried on all counts of the indictment, and his plea agreement "would" be void, if he testified); *United States v. Morrison*, 535 F.2d 223, 225–26 (3rd Cir.1976) (prosecutor told defense witness that her testimony "would" be used against her in drug prosecution, and that perjury charges were "possible," if she testified).[3]

On the other hand, when the prosecutor or the trial judge has told a prospective defense witness he *could* face prosecution if he testified, a majority of courts have found that no misconduct occurred. Annotation, *Admonition*, 88 A.L.R.4th at 393–97, 403–05, 425–27, 444–47. This group includes cases that are factually similar to the case at bar. *See United States v. Gloria*, 494 F.2d 477, 484–85 (5th Cir.), *cert. denied*, 419 U.S. 995, 95 S.Ct. 306, 42 L.Ed.2d 267 (1974) (prosecutor did not act improperly in "merely advising" prospective defense witness, who had previously pled guilty in connection with the incident underlying the charge facing the defendant, "of the possibility of prosecution if his testimony materially differed from his prior plea"; the court distinguished *Webb* on the ground that in *Webb* the witness was threatened with "certain prosecution."); *Reese v. United States*, 467 A.2d 152, 158 (D.C.App. 1983) (when trial judge advised defense witness who was planning to recant grand jury testimony implicating defendant, of the fact that his testimony "could" be used against him and of the penalty for perjury, the judge's action did not constitute threat or intimidation but merely insured that the witness was aware of his potential criminal liability; the case includes a separate prosecutorial misconduct claim resolved on ground of lack of prejudice); *People v. Wein*, 382 Mich.

---

**3.** The *Morrison* court did say: "a warning of rights by the court prior to Sally Bell's (witness) testimony would be adequate protection against an unknowing waiver of her rights against self-

588, 171 N.W.2d 439 (1969) (held it was not reversible error in a criminal case for the trial judge to caution the defendant that a penalty attaches to perjury; the court explained witnesses are required, on trial, to take the oath to tell the truth and to do so; that to testify falsely may constitute perjury punishable by contempt proceedings or otherwise need not be kept secret from a witness as a prerequisite to a fair trial); *State v. Koller*, 87 Wis.2d 253, 274 N.W.2d 651 (1979) (during the course of the trial the prosecuting attorney advised the judge that a Mr. Kretlow, who was later called as a witness for the defense, may be recharged with the crime of robbery. The trial judge called a recess and advised Kretlow what the prosecuting attorney had informed him. The trial judge then advised Kretlow that anything he might say in this case in open court may be used against him in a court of law in a subsequent trial if he should be charged with robbery. Kretlow thereafter asserted his Fifth Amendment privilege and was excused by the court. The court held the witness was not coerced into silence by threats of prosecution.) "[T]here were no ex parte communications with the witness. The prosecutor did what the court, in *United States v. Smith*, 156 U.S.App.D.C. 66, 478 F.2d 976 (1973),[4] said was the proper course—he advised the judge of the situation and the judge informed the witness of his rights." *Koller*, 274 N.W.2d at 665. In addition, the court stated "the district attorney did not say that the

witness would be prosecuted if he did not stop testifying, but rather that the witness could be prosecuted if he incriminated himself by his testimony."[5] *Id.*

## C.

■ We must now decide whether McCarthy was intimidated by the threat of a perjury charge. Like in *Fox*, we do not believe that McCarthy was "cowed into silence by an overzealous prosecutor." Rather, McCarthy, from the very beginning, independent of any comments by the court and the prosecuting attorney, expressed his intention to invoke his Fifth Amendment right to remain silent. To clarify this result, we resort to the record on appeal which reveals the following sequence of events:

(1) McCarthy entered a plea of guilty to possession with intent to deliver. At the time of the trial of the case at bar, he was serving a fifteen-year sentence. In connection with the plea bargain, McCarthy signed the following affidavit:

I, Tary Iver McCarthy, being first duly sworn on oath, depose and state:

On August 7, 1992 I was driving my car, a Chevy Camaro, on Highway 175 in Ida County, Iowa. Riding in the car with me was Richard L. Peterson. I have known Peterson for some time. In the rear seat of my Camaro, under a plaid jacket, were three large bags each of which contained four bags of marijuana. Both Richard L. Peterson and I knew of the presence of

---

incrimination...." *State v. Morrison*, 535 F.2d 223, 227 (3d Cir.1976).

**4.** On the morning of the second day of trial, in *United States v. Smith*, 156 U.S.App.D.C. 66, 478 F.2d 976 (1973), the Assistant United States Attorney approached defense witness Twitty and advised him to seek independent legal counsel and he could potentially be prosecuted for carrying a dangerous weapon and as an accessory after the fact because he had carried the weapon back to Jarvis after the shooting. The *Smith* court reversed the conviction stating:

We think the prosecutor's warning was plainly a threat that resulted in depriving the defendants of Twitty's testimony. The government argues in its brief that Twitty had a right to be advised that he might incriminate himself and be subject to prosecution if he elected to testify, and the government suggests that the prosecutor was only protecting Twitty's rights when he warned him. Even if the prosecutor's

motives were impeccable, however, the implication of what he said was calculated to transform Twitty from a willing witness to one who would refuse to testify, and that in fact was the result.... *If the prosecutor thought the witness should be advised of his rights then he should have suggested that the court explain them to Twitty.* The matter would then have been presented to Twitty by the court without any threats or implications of retaliation.

*Smith*, 478 F.2d at 979 (emphasis added).

**5.** The Wisconsin supreme court distinguished the Third Circuit's decision, in *United States v. Morrison*, by emphasizing in that case that the prosecutor, on at least three occasions, warned the witness through the attorney that she was liable to be prosecuted on drug charges, that if she testified the testimony would be used as evidence against her, and that she could be prosecuted under federal perjury statutes. The court noted the prosecutor even went to the length of sending her a subpoena to come to his office with the

this marijuana, and we intended to sell it. Elsewhere in my Camaro was a large trash bag containing two packages of marijuana which were wrapped in newspapers and clothes. Both Richard L. Peterson and I know of the presence of this marijuana, and we also intended to sell it. We were stopped by an Ida County deputy sheriff and later arrested.

(2) The State anticipated that Peterson would testify he did not know about the marijuana in McCarthy's car. The State brought McCarthy from Oakdale as a potential rebuttal witness against Peterson. The county attorney talked to McCarthy and McCarthy told the county attorney if he were called as a witness, he would give testimony inconsistent with his sworn affidavit. To the county attorney's credit, he immediately notified Peterson's attorney that McCarthy might provide evidence exculpatory to Peterson.

(3) After Peterson's attorney interviewed McCarthy, he called him as a witness. McCarthy said, before he testified, he wanted to consult with an attorney because he might be charged with perjury and he did not want to testify before he had that opportunity.

(4) The court appointed an attorney to represent McCarthy. Thereafter, he was then questioned on the witness stand about whether Peterson knew there was marijuana in his car and McCarthy declined to answer on grounds it might incriminate him.

(5) It was then the court asked the county attorney what the State would do if McCarthy testified as Peterson's attorney expected he would and the county attorney replied, "We have not promised to file perjury charges. Our position is that if he testified today in material variance with exhibit 101 [his statement] we would investigate filing perjury charges." The court then decided to allow McCarthy to assert his Fifth Amendment privilege.

Under these circumstances, we cannot conclude that McCarthy's silence was a result of threats by the prosecuting attorney. McCarthy, without any mention by the prosecuting attorney, was aware of what could take place if he gave testimony inconsistent with his previous affidavit. The court appointed an attorney to represent him. In the discussions McCarthy had with his attorney, it was decided he should plead the Fifth Amendment.[6] He did so. The subject of perjury only came into being after he exercised his Fifth Amendment right, and then only after the county attorney was asked by the court what the State would do if McCarthy testified as Peterson's attorney expected he would. The court made this inquiry only as an aid to determine whether McCarthy had any Fifth Amendment privileges.

This does not rise to the level of intimidation. Since we do not find intimidation, we conclude there was not a violation of due process.[7]

### D.

Even when the defendant has shown that the prosecutor improperly intimidated a defense witness, our supreme court has declined to grant relief unless the defendant also establishes that he suffered prejudice. *Fox*, 491 N.W.2d at 532. Assuming arguendo that McCarthy was intimidated, the next question that then needs answering is whether the defendant was prejudiced. In this respect, Justice Harris, speaking for a unanimous court in *State v. Anderson*, 448 N.W.2d 32 (Iowa 1989), stated:

> if Johnson testified as Simmons wanted him to and Simmons' lawyer was not going to be a party to perjury.
> *United States v. Simmons*, 699 F.2d 1250 (D.C. 1983).

apparent purpose of intimidating her. *Koller*, 274 N.W.2d at 664.

**6.** In an instance in which a witness was advised by counsel to plead the Fifth Amendment, one court stated:

> Thus on the testimony of Simmons' own lawyer, his client was not deprived of Johnson as a witness because of any threats by the government's prosecutor for two reasons: (1) because Johnson took the Fifth Amendment on the advice of his counsel and (2) because Simmons' lawyer had decided it would constitute perjury

**7.** Although we have held that intimidation is lacking in this case, we strongly urge prosecuting attorneys not to become involved in any discussion with witnesses concerning either the possibility or probability of perjury charges. Whether a witness can be guilty of perjury is better left with an opinion from that witness' attorney.

A prosecutor's misconduct will not warrant a new trial unless the conduct was "so prejudicial as to deprive the defendant of a fair trial." *State v. Lyons,* 210 N.W.2d 543, 549 (Iowa 1973); *State v. Harless,* 249 Iowa 530, 536, 86 N.W.2d 210, 213–14 (1957), *cert. denied,* 357 [355] U.S. 908 [965], 78 S.Ct. 1154 [558], 2 L.Ed.2d 1158 [541] (1958). The party claiming prejudice bears the burden of establishing it. *State v. Bishop,* 387 N.W.2d 554, 561 (Iowa 1986). It is not the prosecutor's misconduct which entitles a defendant to a new trial, but rather any resulting prejudice which prevents the trial from being a fair one. *State v. Webb,* 244 N.W.2d 332, 333 (Iowa 1976). Trial courts are vested with broad authority to determine if prejudice actually results from misconduct. *State v. Ruble,* 372 N.W.2d 216, 218 (Iowa 1985). Appellate courts will overturn a trial court's ruling only upon finding an abuse of discretion. *Id.* An abuse of discretion appears only when it was "exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

■ We are unable to find an abuse of discretion. When we give consideration to the whole trial, we are unable to find prejudice.

The evidence against Peterson is very strong. As shown by court exhibit 1000, Peterson and McCarthy had known each other for several years and had been associated with each other in various commercial enterprises during the six months before their arrest. When the two of them were apprehended, Peterson had easy access to six packages of marijuana which were hidden in various places in the car.

At first, Peterson denied to the arresting officer that he knew McCarthy. He stated that McCarthy had picked him up earlier in the day and they were heading for his mother's funeral in Lake View.

At Peterson's trial, however, the arresting officer testified that after searching the McCarthy car, he found two of Peterson's Arkansas game and fishing licenses, one dated December 13, 1991, and the other dated February 18, 1992. In addition, he found Peterson's receipt from a Fargo, North Da-

kota pawn shop, dated July 24, 1992, Peterson's receipt from a scrap processor of Webster City, Iowa, dated July 15, 1992, and an Atlas road map that contained Peterson's father's telephone number. These items were scattered throughout the car.

To refute Peterson's other assertion that they were on their way to his mother's funeral, it was later established by Peterson's own admission that this along with the statement that he did not know McCarthy were false. This admission came by way of a stipulation of facts for trial purposes. Peterson's mother was not dead.

Peterson's attempt to disassociate himself from McCarthy and the car, before the marijuana was discovered, strongly supports the inference Peterson knew the marijuana was there. *See State v. Cox,* 500 N.W.2d 23, 25 (Iowa 1993) (admissions may be implied by the conduct of the defendant subsequent to a crime, including fabrication, when such conduct indicates a consciousness of guilt. A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt.) Finally, McCarthy's own statement established Peterson knew the marijuana was in the car and intended to sell it. Coupled with McCarthy's statement, even if he had testified as Peterson's counsel expected, his recantation of his prior sworn statement would have been "looked upon with the utmost suspicion." *Jones v. State,* 479 N.W.2d 265, 275 (Iowa 1991).

Given the strength of the State's case, it is highly unlikely the lack of McCarthy's testimony influenced the trial judge's verdict. We conclude under this heading that even if the misconduct had occurred, the court acted well within its discretion. Peterson was not prejudiced.

■ III. *Immunity.* Peterson also claims the district court failed to grant McCarthy the requested immunity. Use immunity is an order of the court that compels a witness to give self-incriminating testimony while at the same time prohibits the use of such testimony in a subsequent prosecution of the witness. *Fox,* 491 N.W.2d at 533.

We find the district court properly denied immunity. Our Iowa supreme court has not yet decided whether use immunity is constitutionally required. *Id.* It has confirmed, however, that the district court on its own motion has no statutory authority to grant use immunity. *Id.* "If such authority does exist, it must come from the district court's general inherent power." *Id.*

Commenting, in *Fox,* on whether use immunity is constitutionally required, our supreme court made these observations:

> A number of courts have addressed the issue of whether use immunity is constitutionally required for essential exculpatory testimony....
>
> The majority of these courts refuse to recognize such immunity as constitutionally required. (Citation omitted.) Generally, several policy reasons are given for this refusal. First, in granting use immunity to defense witnesses, the judicial branch risks encroaching on policy assessments traditionally made by the executive branch. *See United States v. Thevis,* 665 F.2d 616, 639–40 (5th Cir.1982).
>
> Second, defense use immunity significantly impairs the State's ability to prosecute immunized witnesses and increases the State's burden of proof. In such trials, the State must overcome the additional requirement that its evidence is "untainted" by the immunized testimony. *Id.*
>
> Last, the potential for abuse by codefendants, coconspirators, friends, and employees in defense use immunity cases is substantial. *Id.* As one court noted, granting use immunity to defense witnesses "could create opportunities for undermining the administration of justice by inviting cooperative perjury among law violators." *United States v. Turkish,* 623 F.2d 769, 775 (2nd Cir.1980).

*Fox,* 491 N.W.2d at 533.

Defendants can be entitled to a grant of immunity for prospective witnesses under one of two emerging theories. *United States v. Angiulo,* 897 F.2d 1169, 1190 (1st Cir. 1990). A small minority accepts the first theory, labeled the "effective defense theory." *Id.* "It holds a court has the inherent power to immunize witnesses whose testimony is essential to an effective defense." *Id.* A number of federal circuits have accepted the second theory referred to as the "prosecutorial misconduct theory." *Id.* It holds a court has the power to order the government to grant statutory immunity to a witness (or face a judgment of acquittal) where the government's deliberate intent to distort the fact-finding process results in prosecutorial misconduct. *Id.*

## EFFECTIVE DEFENSE THEORY

The defendant cites us to the case of *Government of the Virgin Islands v. Smith,* 615 F.2d 964 (3rd Cir.1980), which holds that:

> When it is found that a potential defense witness can offer testimony which is clearly exculpatory and essential to the defense case and when the government has no strong interest in withholding use immunity, the court should grant judicial immunity to the witness in order to vindicate the defendant's constitutional right to a fair trial.

*Virgin Islands,* 615 F.2d at 974.

Under this theory, the inherent power to grant immunity rests with the court itself. The power is grounded in a defendant's due process right to have exculpatory evidence presented to the jury. *See id.* at 969–974. According to the *Angiulo* case, this theory has been rejected by virtually every court that has considered the issue. *Angiulo,* 897 F.2d at 1191.

The frequent rationale given in opposition to this theory is that it would pose separation of power problems for courts to assume inherent authority to grant judicial immunity themselves. *Id.* "The rationale is that the power to grant witness immunity is of legislative origin and was granted to the executive branch." *Id. Angiulo* also emphasizes that "[f]or the judiciary to exercise this power in the absence of a legislative grant would violate separation of power principles." *Id.* In addition, it has been observed that an acceptance of this particular theory would force a judge to balance a defendant's need for particular witnesses against the prosecutor's reason for failing to seek immunity for the witness—an exercise ill suited for judicial

decision making. *See United States v. Turkish,* 623 F.2d 769, 775–77 (2d Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981).

These arguments have considerable force but since we hold that McCarthy was not intimidated we need not decide whether the effective defense theory should be applied under Iowa law.

## PROSECUTORIAL MISCONDUCT THEORY

■ Although there has been nearly a universal rejection of the effective defense theory, "courts have held that the due process clause does constrain the prosecutor to a certain extent in deciding whether to grant or not to grant immunity." *Angiulo,* 897 F.2d at 1191. It is clear that if a prosecutor intentionally attempts to distort the fact finding process, then there is a due process violation, and a court may order the prosecutor to grant immunity or else face a judgment of acquittal. *See United States v. Hooks,* 848 F.2d 785, 799 (7th Cir.1988).

■ It is said that intentional distortion can occur in two ways. First, the government could discourage testimony from a potential defense witness through intimidation or harassment—for example by threatening them with prosecution for perjury or other offenses. *Angiulo,* 897 F.2d at 1192. Where such tactics cause a potential defense witness to invoke the Fifth Amendment and withhold testimony which otherwise would have been available to the defendant, a court may order the prosecutor to grant immunity to the defense witness or else face a judgment of acquittal. *Id.* "Second, the government could intentionally distort the fact-finding process by deliberately withholding immunity from certain prospective defense witnesses for the purpose of keeping exculpatory evidence from the jury." *Id.*

We have found the defendant has failed to make an adequate showing of either type of prosecutorial misconduct. Peterson sought for McCarthy absolute immunity [8] from prosecution for perjury. To grant such immunity would in effect, as the State argues, constitute a license to lie to the court. To compel the prosecutor to grant immunity under the threat of dismissal would place McCarthy in a position to commit a crime with absolute impunity. We reject defendant's prosecutorial misconduct theory and find no error in the State's failure to offer immunity to McCarthy.

■ But even if the district court had erred in refusing to immunize McCarthy, the defendant has not been prejudiced for the reasons set forth in the previous division of this opinion. This matter was tried to a judge who had before him the witnesses and their testimony. There just is no reasonable probability that the verdict would have been different if McCarthy had been immunized and had given testimony contradicting his prior sworn statement.

**AFFIRMED.**

DONIELSON, C.J., and HABHAB and CADY, JJ., concur.

SACKETT and HAYDEN, JJ., dissent.

HUITINK, J., takes no part.

SACKETT, Judge (dissenting).

I dissent.

Defendant-appellant Richard Lynn Peterson was convicted of possession with intent to deliver in violation of Iowa Code section 204.401(1)(d) (1991) [1] and possession of a taxable substance without an excise stamp in violation of Iowa Code section 421A.12 (1991).[2] Peterson contends his rights to due process were violated by the State's intimidation of a defense witness, Tary McCarthy. I would reverse and remand for a new trial.

Peterson was riding in a car owned and operated by McCarthy when the car was pulled over for a seat belt violation and sub-

---

**8.** Our supreme court has stated that such "immunity—if available at all—should be considered only in circumstances in which the prosecution has improperly prevented a defense witness from giving essential exculpatory evidence." *Fox,* 491 N.W.2d at 533–34.

**1.** Iowa Code section 204.401(1)(d) is now codified at Iowa Code section 124.401(1)(d) (1993).

**2.** Iowa Code section 421A.12 is now codified at Iowa Code section 453B.12 (1993).

sequently searched. Three large bags of marijuana, as well as small quantities of other narcotics, were found hidden in the car behind the dashboard and in the trunk. Charges were filed against both McCarthy and Peterson. McCarthy entered into a plea to bargain, pled guilty, and was sentenced. As a part of his plea bargain, McCarthy signed an affidavit prepared by the county attorney stating he and Peterson both knew marijuana was in the car and intended to sell it. McCarthy was to testify later that he was told part of the plea agreement was he would not have to testify for the State or against Peterson.

Peterson elected to be tried by the court. The State, anticipating Peterson would testify at his trial, brought McCarthy, from where he was incarcerated, as a potential rebuttal witness. The county attorney talked to McCarthy during the trial, and McCarthy told the county attorney if he were called as a witness, he would give testimony inconsistent with his sworn affidavit. McCarthy testified after this conversation he knew if he testified the State would bring perjury charges against him.

The county attorney notified Peterson's attorney McCarthy might provide exculpatory evidence. Peterson's attorney interviewed McCarthy. After the interview, Peterson's attorney was to tell the court he expected McCarthy to testify Peterson did not know the marijuana was in the car and Peterson had no intent to deliver the marijuana.

Peterson called McCarthy as a witness. McCarthy said before he testified he wanted to consult with an attorney because he might be charged with perjury and he did not want to testify before he had that opportunity.

Then the following exchange occurred between Peterson and the court:

The Court: Did you give some statement about these circumstances under oath before?

McCarthy: Yes, I did, in a sense. I was given a plea agreement—more or less a plea agreement that I would not have to plead—or give witness evidence for the state or against Richard Peterson and con-

sequently here I am having to, which will bring perjury charges.

. . . .

The Court: It is my understanding, Mr. McCarthy, that from the discussions that you've had with Mr. Jones that it may well occur that the questions—or the answers that you give to questions relating to that subject matter here today may be different than what's contained in that affidavit?

McCarthy: That's correct.

The court appointed an attorney to represent McCarthy and, after McCarthy consulted with the attorney, he was questioned on the witness stand about whether Peterson knew there was marijuana in his car, and McCarthy declined to answer on grounds that it might incriminate him.

The court then asked the county attorney what the State would do if McCarthy testified as Peterson's attorney expected he would, and the county attorney replied: "We have not promised to file perjury charges if he testifies. Our position is that if he testified today in material variance with Exhibit 101 [his statement] we would investigate filing perjury charges."

The court then decided to allow McCarthy to assert his Fifth Amendment privilege. Later in the trial, McCarthy was asked by Peterson's attorney if he had, when not under oath, made statements different than some of the statements in the affidavit. The county attorney said McCarthy, in answering the question, might subject himself to a charge of perjury, and the court again allowed McCarthy to invoke the Fifth Amendment.

McCarthy testified that, based on conversations he had with the county attorney and the attorney general, he understood he would be subject to prosecution for perjury if he gave testimony contrary to the affidavit.

After several more questions directed to Peterson's knowledge of the drugs in the car, Peterson's attorney asked the court grant McCarthy use immunity so he could testify truthfully in the trial or the trial court grant a mistrial because of prosecutorial misconduct. Peterson's attorney advanced the prosecutors improperly obtained the plea and

affidavit from McCarthy and threatened to charge him with perjury if his testimony differed from his prior statement.

The trial court refused to grant McCarthy use immunity and overruled Peterson's motion for a mistrial. On appeal, Peterson renews his claims.

Peterson contends he was denied due process. Peterson raises a constitutional issue; therefore, I review de novo. *See State v. Stanford*, 474 N.W.2d 573, 575 (Iowa 1991).

Peterson first contends prosecutorial misconduct denied him due process. The question is whether the prosecutor violated Peterson's right to present a defense. The right to offer the testimony of witnesses, and to compel their attendance is, in plain terms, the right to present a defense, the right to present the defendant's version of facts as well as the prosecution's to the jury so it may decide where the truth lies. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1967). An accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony and he or she has the right to present his or her own witnesses to establish a defense. *Id.* Substantial government interference with a defense witness's free and unhampered choice to testify violates due process. *United States v. Henricksen*, 564 F.2d 197, 198 (5th Cir.1977); *United States v. Thomas*, 488 F.2d 334, 335 (6th Cir.1973).

The Iowa Supreme Court clearly supports a defendant's right to a fair trial and has held it is not proper to intimidate a witness. *State v. Fox*, 491 N.W.2d 527, 532 (Iowa 1992). And if the defendant is prejudiced[3] as a result of the intimidation, then the defendant is deprived of his or her due process. *State v. Ivy*, 300 N.W.2d 310, 314 (Iowa 1981); *see also State v. Hall*, 235 N.W.2d 702, 712 (Iowa 1975). A prosecutor may impeach a witness in court, but he or she

may not intimidate him or her—in or out of court. *Ivy*, 300 N.W.2d at 314.

The State argued McCarthy was not intimidated because he was only told some charges may follow, not that they would follow. The majority adopted this argument which is contrary to the holding of *Ivy* when a witness was told by the county attorney he *might* be charged with a criminal offense if he didn't tell the truth and the court said of this conversation, "this witness was certainly threatened with criminal prosecution if he didn't tell the 'truth'." *Id.* at 313–14.

I look, too, to *Fox*, 491 N.W.2d at 530 and 532, where the court found the county attorney's statement to the witness's attorney that if witness testified in a way inconsistent with the State's belief about the events surrounding a shooting, the State would view the testimony as perjury and would promptly move to revoke the witness's deferred judgment and probation, to be improper tactics. *See also Henricksen*, 564 F.2d at 198 (court found substantial government interference with the defense witness's free and unhampered choice to testify violated due process where witness whose testimony would tend to exonerate the defendant as a part of a plea bargain had agreed not to testify and the government said if he did testify, the plea bargain would be void); *Morrison*, 535 F.2d at 230–31 (court found prosecutor's repeated warnings to a prospective defense witness about the possibility of a federal perjury charge if she testified falsely after she had agreed to give testimony favorable to the defendant violated the defendant's due process rights).

The testimony of the prosecutor and McCarthy make it clear McCarthy was told by the prosecutor he was under threat of criminal prosecution if he testified and his testimony was contrary to his affidavit. I find the prosecutor interfered with McCar-

---

**3.** The federal courts have not required a showing of prejudice. It is suggested that the United States Supreme Court did not require a showing of prejudice when they reversed a Texas Court of Appeals decision in *Webb v. Texas*, 409 U.S. 95, 99, 93 S.Ct. 351, 354, 34 L.Ed.2d 330, 334 (1972). In *Webb*, the Court reversed where a defense witness was prevented from testifying freely without addressing the dissenting justices

claim there was overwhelming evidence. Relying on *Webb*, the 3rd Circuit in *United States v. Morrison*, 535 F.2d 223, 228 (3rd Cir.1976), said "[W]here the Government has prevented the defendant's witness from testifying freely before the jury, it cannot be held that the jury would have believed the testimony or that the error was harmless."

thy's free and unhampered choice to testify and, in doing so, violated Peterson's due process rights.

However, before Peterson is entitled to a new trial, he must show he was prejudiced by the absence of the testimony. *State v. Erving*, 346 N.W.2d 833, 836–37 (Iowa 1984); *Ivy*, 300 N.W.2d at 314. In determining whether prejudice has resulted from prosecutor's intimidating tactics, trial courts are afforded broad discretion. *Fox*, 491 N.W.2d at 532. In examining this issue, I make two inquiries. The first is, had it not been for the intimidation, would McCarthy have testified, and, second, if the testimony had been admitted, could it have changed the result of Peterson's trial?

The statements in the record from both the attorneys for the State and for Peterson, as well as remarks made by McCarthy to the judge, can only support one conclusion, that being, it was McCarthy's intention to testify, contrary to his affidavit, that Peterson had no knowledge of the drugs in the car.

The record is just as clear the reason McCarthy did not testify was because of the threat of possible perjury charges being brought against him by the county attorney. I find, but for the county attorney's intimidation, McCarthy would have given testimony favorable to Peterson's position.

My second inquiry is whether the evidence McCarthy would have provided could have changed the result of Peterson's trial. McCarthy's testimony Peterson did not know the drugs were in the car corroborates Peterson's version of the facts. The large stash was hidden so it would not have been in Peterson's view. The State, to convict Peterson, had to show beyond a reasonable doubt Peterson knowingly possessed the controlled substance and Peterson had a specific intent to deliver the controlled substance. McCarthy's testimony clearly went to the heart of the issues in the case, Peterson's knowledge and intent. McCarthy's testimony refuted the State's strongest evidence, that being, Peterson's presence in the vehicle where the substance was found. I find, had McCarthy testified, the result of the trial could have been different. Peterson's motion for mistrial should have been sustained.

Peterson's second challenge is the trial court should have given McCarthy the requested immunity. Use immunity is an order of the court that compels a witness to give self-incriminating testimony while at the same time prohibiting the use of such testimony in a subsequent prosecution of the witness. *Fox*, 491 N.W.2d at 533. In *Fox*, the Iowa court discussed a request that had been made for use immunity and said the majority of courts refuse to recognize use immunity as constitutionally required; the defense's use of use immunity significantly impairs the State's ability to prosecute immunized witnesses and there is a potential for abuse. *See id.* at 533. The court went on, however, to find it did not need to decide the issue because, if use immunity is available at all, it should be considered only in circumstances in which the prosecution has improperly prevented a defense witness from giving essential exculpatory evidence, *id.* at 533–34, and the court did not find such a situation to exist in *Fox*. Peterson advances this is the case where use immunity should be available because exculpatory testimony otherwise will be excluded because the State's threat of prosecution for perjury will force McCarthy to again assert the Fifth Amendment privilege. In *Government of Virgin Islands v. Smith*, 615 F.2d 964 (3rd Cir.1980), the court said judicial immunity is triggered by the fact the defendant is prevented from presenting exculpatory evidence which is crucial to his or her case rather than by prosecutorial misconduct or intentional distortion of the trial process. *See id.* at 969. The justification for employing such a power arises from the due process right to have clearly exculpatory evidence presented to the jury, at least when there is no strong countervailing systemic interest which justifies its exclusion. *Id.* at 970. The basic constitutional doctrine that the defendant has the right to an effective defense is inherent in the guarantee of a fair trial and due process of law which is a well established and long recognized right. The case at bar is one in which clearly exculpatory testimony will be excluded because of a witness's assertion of the Fifth Amendment privilege. Therefore,

a compelling justification exists for grant of immunity.

*Virgin Islands* set forth a five-step test that must be met before the grant of immunity may be secured. First, immunity must be sought in the district court; second, the defense witness must be available to testify; third, the proffered testimony must be exculpatory; fourth, the testimony must be essential; and fifth, there must not be strong governmental interests which countervail against a grant of immunity. *See id.* at 972. This case meets that five-step test. The evidence was identified at trial, and a proper application for its admission was made. The witness was named, and the trial court was fully aware of what testimony he would give. He was in the court room on the stand when he pled the Fifth Amendment right. The evidence was exculpatory to Peterson's case. The State showed no countervailing interests.

An additional question arises and that is, whether the court has the authority to grant immunity without a request from the State. There are strong arguments made for not allowing a defendant to request immunity for his or her witness. *See generally In re Kilgo,* 484 F.2d 1215, 1222 (4th Cir.1973). There are circumstances under which due process may demand the State request use immunity for a defendant's witness. *See Morrison,* 535 F.2d at 229. I would reverse and remand for a new trial. I would hold, in the event Peterson calls McCarthy as a witness and McCarthy invokes his Fifth Amendment right not to testify, a judgment of acquittal shall be entered unless the State requests use immunity for his testimony. *See id.*

Also of significant importance and somehow missed by the majority here is the effect decisions such as this have on fact finders, jurors, or judges who we ask in criminal trials to decide guilt or innocence with the resulting and substantial impact, as here, on the difference between an individual's (Peterson's) freedom and incarceration. The judge, before rendering a verdict, should have heard the testimony of the driver of the car, McCarthy, who, despite a written statement given earlier, would have testified Peterson did not know the drugs were in the car. The State could have impeached the testimony by the prior statement but the fact finder charged with determining the truth, would have had the opportunity to decide which time the witness was truthful on the issue; an issue crucial to Peterson's guilt or innocence. I am disappointed the State and the majority here feel the fact finder should not have that evidence. The prosecutor's position is to convict the guilty, not the innocent. Sometimes the desire to win gets in the way. A trial is a search for the truth. Maneuvers that stand in the way of fact finders having all the evidence should not be condoned. When we allow intimidation to keep relevant evidence from a fact finder, we tarnish our system for reaching justice and finding the truth.

I realize the majority has hinged its decision on the finding McCarthy was not intimidated by the county attorney. Such a finding is totally contrary to what happened here. After talking to McCarthy, the county attorney suggested he would consider perjury if McCarthy did not testify. Not only did McCarthy have to worry about the filing of a perjury charge, which would be of concern to an ordinary citizen, but he faced the probability that the fact a perjury charge might be filed or would be filed would have a direct effect on the term of his current incarceration.

In my mind, there is no question but McCarthy was intimidated not to testify.

I would reverse and remand for a new trial.

HAYDEN, J., joins this dissent.